UNITED STATES DISTRICT COURT
FOR THE STATE OF RHODE ISLAND

MICHAEL F. GRADY, a
Rhode Island domiciliary,

Plaintiff,

v.

EDWARD GOLDBERG, a
New Jersey domiciliary,
MINDY GOLDBERG, a
New Jersey domiciliary, and
UNIVERSAL SOURCING,
INC., a New Jersey corporation,

Defendants.

CA 07 237S
CASE NO.

## COMPLAINT FOR DAMAGES

The Plaintiff, MICHAEL F. GRADY ("Grady"), appearing Pro Se on behalf of himself, and pursuant to the Federal Rules of Civil Procedure and the Local General Rules of the United States District Court for the State of Rhode Island, serves this his Complaint for Damages against the Defendants, EDWARD GOLDBERG ("Goldberg") and MINDY GOLDBERG (collectively referred to as "Goldbergs") and UNIVERSAL SOURCING, INC. ("USI") and alleges as follows:

## GENERAL ALLEGATIONS

### The Parties

1. Goldberg is a citizen and domiciliary of the State of New Jersey. He is of the age of majority, and, otherwise, sui juris.

2. Mindy Golderg is a citizen and domiciliary of the State of New Jersey. She is of the age of majority, and, otherwise, sui juris.

3. USI is a corporation organized and formed in the State of New Jersey. It has its

principal place of business in the State of New Jersey. However, it conducts substantial but not isolated business in the State of Rhode Island, and, consequently it is subject to in personam jurisdiction in the State of Rhode Island.

4. The Goldbergs are also subject to in personam jurisdiction in the State of Rhode Island as they have conducted substantial but not isolated business in the State of Rhode Island, and, they each have made representations and admissions to Grady in the State of Rhode Island with regard to the transaction which is the subject matter of this Complaint for Damages.

5. Grady is a citizen and domiciliary of the State of Rhode Island. He is of majority age and otherwise, sui juris.

<u>Jurisdiction and Venue</u>

6. This is a cause of action between citizens and domiciliaries of different states and the amount in controversy exceeds the value of $75,000.00, exclusive of interest and costs, and, consequently, there is subject matter jurisdiction pursuant to 28 U.S.C. 1332.

7. Venue is appropriate pursuant to 28 U.S.C. 1391 because a substantial part of the events or admissions giving rise to the Complaint for Damages occurred within this judicial district. Moreover, USI maintains an office in East Greenwich in the State of Rhode Island, and, USI conducts substantial but not isolated business in the State of Rhode Island.

8. Moreover, Goldberg and Mindy Goldberg made representations to Grady with regard to the transaction which is the subject matter of this cause of action in the State of Rhode Island.

**<u>Material Facts Common to All Causes of Action</u>**

9. On or about 1997, the Goldbergs offered Grady the opportunity to own 50% of USI in exchange for which Grady would pay to USI his 50% of the net profits he earned on transactions that he brokered through other suppliers of premiums. Prior to his agreement to acquire an

ownership interest in USI, Grady procured premiums such as fanny packs, cameras, CD players, radios, tool kits, tote bags, calculators, pens, pencils, flashlights and other similar type promotional products brand named for clients such as Inc. Magazine to promote goodwill for those clients.

10. In 1997, Grady and Goldberg agreed that Grady would acquire a 50% ownership in USI. Prior to the agreement to acquire an ownership interest in USI, Grady procured premiums for his clients through several suppliers, including but not limited to USI.

11. The agreement Grady had with premium suppliers was to share 50% of the net profit *for each transaction. Pursuant to his agreement with the Goldbergs and USI, Grady would direct* all of his profit which he earned on transactions which he brokered through other suppliers to be paid directly to USI. In addition, the net profits that were earned on any transaction where USI was the supplier went directly to USI. These amounts were the typical 50% split of the net profit.

12. In return, Grady was to acquire a 50% interest in USI and receive a salary from USI and generate sales. Goldberg was responsible to supervise the office staff and handle purchase orders, customs compliance, deliveries and all other ordering and shipping related at issues. Goldberg was also responsible to handle the financial aspects of USI, including receivables, payables, cash flow and accounting. In fact, his father was retained as the outside accountant for USI.

13. The role of Goldberg to supervise the office staff, it was agreed, was not a full time *job. As such, Goldberg was also expected to concentrate on the generation of sales.*

14. Over the next several years, Grady became increasingly frustrated because Goldberg never consummated the agreement for the delivery of the shares in USI or a shareholders agreement which had also been promised.

15. Finally, in January of 2001, an agreement for the purchase and sale of a 50% interest

in USI by Grady was prepared and executed, a copy of which is attached hereto, made a part hereof, and, marked as Exhibit "1" (the "Agreement").

16. Based upon representations made by Goldberg, the Agreement contains a provision where the alleged consideration for the transfer of stock was $30,000.00. Goldberg insisted that this provision be placed in the Agreement because he stated the SBA lender to USI would not accept and approve the transaction for the sale of some stock in USI unless specific dollar consideration was mentioned. At the time, Mindy Goldberg was the sole shareholder of USI. Goldberg named his wife as sole shareholder in USI in order to take advantage of certain minority owned business related programs.

17. As a consequence, the Agreement was drafted to reflect that financial consideration.

18. In May, 2001, Goldberg assured Grady that the SBA lender had approved the transaction for the transfer of the stock to Grady from Mindy Goldberg and the SBA lender would not hold USI in default as a result of the sale of stock to Grady. Nonetheless, the Goldbergs and USI still failed and refused to deliver the shares in USI to Grady.

19. Toward the end of 2001, Grady, once again, expressed his ever increasing frustration and disappointment with the failure of the Goldbergs and USI to conclude the transaction for the transfer of the stock in USI. In fact, Grady threatened that if the transaction was not consummated immediately, then, he would revert back to the old arrangement he had with USI. Grady also requested that the Goldbergs and USI fulfill the promise to have a shareholders agreement between USI, the Goldbergs and Grady drafted and finalized. The shareholders agreement was not a condition precedent to the ownership interest of Grady in USI.

20. Eventually, the shares of stock were finally delivered to Grady in February, 2002. A true and correct copy of the original Stock Certificate delivered from USI and Mindy Goldberg to

Grady is attached hereto, made a part hereof, and marked as Exhibit "2".

21. When the shares of stock were delivered to Grady, consistent with the representations and warranties made by Mindy Goldberg in the Agreement, the USI shares would be free of all liens. Moreover, Mindy Goldberg, in the Agreement, had warranted and represented that she had the actual authority and power to sell and transfer the shares for 50% of USI to Grady. Indeed, these are the very same representations made by Goldberg to Grady. Notwithstanding the Agreement reached between the Goldbergs and USI and Grady, the Goldbergs and USI have failed and refused to honor the ownership interest of Grady in USI. In particular, they have failed and refused to provide financial information and failed and refused to provide the necessary information for Grady to file his tax returns, including, but not limited to, forms W-2 and the K-1 statements required to be delivered to shareholders of a SubChapter S corporation.

22. As a proximate cause of the misrepresentations made to Grady by the Goldbergs and USI, Grady has suffered substantial damages, including, but not limited to loss of income because of the distribution of profits to USI from outside transactions with other brokers and the inability to obtain certain tax advantages through the delivery of his forms W-2 and K-1 to Grady from USI.

23. Moreover, USI and the Goldbergs have usurped patents for various products which were invented and designed by Goldberg and Grady and Keith Rosenzweig, another employee of USI. Instead of having those items patented by the three (3) inventors, Goldberg, Grady and Mr. Rosenzweig, Goldberg had the patents put in his own name.

24. Moreover, Grady, Goldberg and Mr. Rosenzweig all invested in a manufacturing plant in China that produces various premiums, but, the Goldbergs and USI have failed and refused to deliver the representation of the ownership interest of Grady in the China manufacturing plant to him.

25. Any and all conditions precedent to the initiation of this action have been performed, occurred or were waived.

**COUNT I**

**FRAUD IN THE INDUCEMENT**

26. Grady realleges and incorporates herein by reference the General Allegations.

27. USI, Goldberg and Mindy Goldberg fraudulently induced Grady into entering into the Agreement to become a shareholder in USI. Goldberg, Mindy Goldberg and USI knew that these representations were false when made. Goldberg, Mindy Goldberg and USI intended to induce Grady to act upon these misrepresentations and concealments.

28. The representations and concealments by Goldberg, Mindy Goldberg and USI induced Grady into entering into the Agreement to become a shareholder in USI. Grady reasonably and justifiably relied upon the misrepresentations and concealments to his detriment.

29. The misrepresentations and concealments made by Goldberg, Mindy Goldberg and USI have proximately caused Grady to suffer significant damages.

30. Therefore, Grady seeks compensatory damages in an amount in excess of $75,000.00 representing lost commissions, tax benefits, salary, benefits, patent rights and his ownership interest in the Chinese factory plus any and all other appropriate relief that this Court deems just and equitable.

WHEREFORE, based on the above, the Plaintiff, MICHAEL F. GRADY, requests this Court enter Final Judgment in his favor against EDWARD GOLDBERG, MINDY GOLDBERG and

UNIVERSAL SOURCING, INC., joint and severally, for any and all consequential, compensatory and special damages and such and further relief as this Court deems just and proper.

MICHAEL F. GRADY
100 Jefferson Drive
E. Greenwich, RI 02818
401-834-9215

H:\LIB\DOCS\11042006\PLDG\HX4401.WPD