**UNITED STATES DISTRICT COURT**
**FOR THE STATE OF RHODE ISLAND**

**CASE NO: 07-237S**

MICHAEL F. GRADY, a Rhode Island domiciliary,

Plaintiff,

v.

EDWARD GOLDBERG, a New Jersey domiciliary, MINDY GOLDBERG, a New Jersey domiciliary, and UNIVERSAL SOURCING, INC., a New Jersey corporation,

Defendants.

---

**DECLARATION OF EDWARD P. PIERONI, ESQUIRE IN OPPOSITION TO THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OVER MINDY GOLDBERG**

EDWARD P. PIERONI, ESQUIRE (the "Affiant"), upon oath, duly states as follows:

1. I am of majority age and all statements contained in this Declaration are based upon my personal, first-hand knowledge.

2. Sometime around May 21, 1999, a meeting between Michael Grady, the Affiant and Edward Goldberg took place at Affiant's then offices at 260 West Exchange Center, Suite 302, Providence, Rhode Island 02903.

3. The central purpose of that meeting was to discuss the action steps necessary to implement the transfer of 50% of the share in Universal Sourcing, Inc. ("USI") from Mindy Goldberg, who is the wife of Edward Goldberg, to Michael Grady. At that meeting, Edward Goldberg, acting on behalf and for the benefit of his wife, had agreed to "sell" and Michael Grady had agreed to "buy" 50% of the shares held by Mindy Goldberg in USI for $48,000.00 effective January 1, 1999.

4. The plan was to have Mr. Grady pay for these shares using his pro rata share of the built up equity locked inside the company. All parties agreed Mr. Grady created in excess of $48,000 in equity in USI through prior contributions, since February 1997, of a percentage of his sales commissions and other efforts.

5. A discussion outline was prepared and faxed to all parties on May 21, 1999, followed by a letter dated October 20, 1999, setting forth the steps necessary to effectuate the transfer agreed upon at the meeting held in Rhode Island. A copy of each document is attached hereto.

6. I declare under penalty of perjury that all statements made in this declaration are true and correct.

Executed this 14th day of December, 2007.

EDWARD P. PIERONI, ESQUIRE

**ANDSAGER, BARTLETT & COMPANY**
CERTIFIED PUBLIC ACCOUNTANTS

KENNETH J. ANDSAGER, CPA, MST
CHRISTOPHER BARTLETT, CPA, CFP

EDWARD P. PIERONI, JD, CFP

360 West Exchange Center, Suite 300
Providence, Rhode Island 02903
Telephone: (401) 272-9100
Fax: (401) 272-4830

**Via Facsimile**

**PERSONAL AND CONFIDENTIAL**

Mr. Edward Goldberg
UNIVERSAL SOURCING, INC.
Corporate Office
117 Fort Lee Road, Unit A-11
Leonia, NJ 07605
(201) 585-8339

Mr. Mike Grady
UNIVERSAL SOURCING, INC.
New England Office
1200 Hartford Avenue, Suite 120
Johnston, RI 02919
(401) 331-6191

Dear Ed and Mike:

Attached is an outline with respect to Mike's buy-in and the company's possible conversion to a Limited Liability Company (LLC).

Please read the outline and call me next week to discuss.

Very truly yours,

Edward P. Pieroni
Principal

Attachment (3 pages)

**UNIVERSAL SOURCING, INC.**

**Discussion Outline**

**I. SHAREHOLDER BUY-IN PLAN**

**A. Stated Goals**

1. Provide for the orderly transition of 50% of the stock in Universal Sourcing, Inc. to Michael Grady.

2. Achieve said transaction in the most tax-advantageous way possible (i.e., avoid income recognition to both parties involved in the transfer, to the extent possible).

**B. Action**

1. Mindy (Ed) agrees to sell 50% of her shares in the company to Michael as of the first day of 1999. They agree, based on their mutual analysis of the company's balance sheet as of the end of 1998 and other factors, to value 50% of the stock at $48,000.

2. The agreement between the two unrelated parties fully contemplates an acquisition of stock as of the first day of the year, and Michael assumes ownership of the stock as of that date.

3. Michael agrees to pay for the stock with a note for $45,000 and $3,000 in cash.

4. After the transfer, the company can make distributions of its AAA balance as of December 31, 1998 to the shareholders in proportion to their stock ownership. Michael can use this distribution to repay the note.

**C. Result**

Fifty percent (50%) of the company is transferred to Michael at a bargained-for purchase price resulting in no gain to the seller, as Mindy's (Ed's) basis in the stock should equal the sales proceeds. The distribution of $90,000 should be tax-free to all shareholders, assuming the company's corporate AAA account balance equals at least $90,000. This is so, even as it relates to Michael, since AAA is a corporate level account not identified with any specific shareholders. When stock is transferred between shareholders, the corporate level AAA account does not follow to the selling shareholder – rather, it is in effect "inherited" by any new shareholders.

**D. Disadvantages**

1. AAA. If the AAA balance of the company decreases as a result of operating losses during the year (before taking distributions into effect), income could result to the shareholders.

2. Valuation Issue. The valuation of the stock at book value as an accurate representation of the company's fair market value is open to challenge. If the IRS determines that the company's value is in excess of its book value, it would result in taxable income to Michael as stock for services. This issue should be minimized due to the fact that the buyer and seller are unrelated parties negotiating in good faith and taking into consideration all aspects of the transactions (i.e., value of the company if Michael were to leave and compete against the business). Naturally, the agreement must be a bona fide business agreement, subject to arm's-length negotiations, and not a tax-avoidance scheme.

## II. CONVERSION OF AN S CORPORATION TO A LIMITED LIABILTY COMPANY (LLC)

The conversion of an S corporation into an LLC requires the liquidation of the S corporation. However, the ability of an S corporation to pass through its income or loss to its shareholders reduces double taxation on the liquidating distribution in most instances. Following is a brief general discussion of the tax treatment of an S corporation liquidation.

***A. Taxation of an S Corporation Liquidation***

1. Tax on Corporation. A liquidating S corporation must recognize gain or loss on distributions of property to the shareholders as if the property had been sold to them for its fair market value (FMV). The character of the gain recognized (capital versus ordinary) depends on the character of the property being distributed. Generally, corporations are allowed to recognize losses when property is distributed to shareholders in complete liquidation of the corporation. However a corporation making a liquidating distribution to a related person cannot recognize the loss if the distribution is not pro rata or disqualified property is distributed. *Disqualified* property is any property acquired by the corporation as a contribution to capital during the five-year period ending on the distribution date; or any property whose adjusted basis is determined by reference to the adjusted basis of such property.

   The gain recognized by the S corporation on the liquidating distribution is passed through to the S corporation shareholders and increases the basis of their S corporation stock.

2. Tax on Shareholder. The tax code requires that the liquidating distribution is to be treated as full payment in exchange for the shareholder's stock. The shareholders must recognize gain equal to the difference between the FMV of the assets received and the adjusted basis of the stock surrendered. Since the S corporation shareholders increase the basis of their stock for the gain recognized by the S corporation on the liquidating distribution, there may be no difference in the basis of the assets received and the shareholders' stock basis. A significant tax may be assessed, however, if the gain recognized by the S corporation on the liquidating distribution is considered ordinary income and is passed through to the shareholder. This ordinary gain cannot offset a capital loss recognized by a shareholder on the disposition of his stock. The shareholder's basis in the property received in the liquidating distributions is its FMV at the time of distribution.

3. S Corporation Holding Built-In Gains Property. Liquidation of an S corporation may cause the corporation to recognize built-in gains tax. The built-in gains tax applies only to S corporations that were formerly C corporations, as in your case. The tax code imposes a 10-year recognition period with respect to property held on the date of the S election that had a FMV different from its tax basis on that date. During the 10-year recognition period, the built-in gains tax is imposed at the highest regular corporate tax rate (currently 35%) on any gain resulting from the disposition of assets held at the time of conversion to S status.

**B. Conclusion - Determining if Conversion is Desirable**

As with the conversion of a C corporation, you should probably only want to consider conversion if circumstances limit the gain that will be recognized by the corporation on the distribution of its assets. An S corporation conversion may be particularly desirable when the corporation holds unappreciated or depreciated assets and has no built-in gains property.

Since Universal Sourcing was a C corporation prior to its making an S-election, it would be subject to the built-in gains tax. Accordingly, the conversion may come with a corporate level tax, as well as an individual level tax. The amount of this tax cannot be determined at this time – as no information is available to determine the company's built-in gain. Further, the individual shareholders will most likely incur some level of tax from the liquidation due to the earnings and profits generated by the company while a C corporation.

Given the fact that the conversion cannot be done without some level of taxation, the shareholders need to determine the benefits of such a conversion.

**ANDSAGER, BARTLETT & COMPANY**

CERTIFIED PUBLIC ACCOUNTANTS

KENNETH J. ANDSAGER, CPA, MST
CHRISTOPHER BARTLETT, CPA, CFP

EDWARD P. PIERONI, JD, CFP

260 West Exchange Center, Suite 302
Providence, Rhode Island 02903
Telephone: (401) 272-9100
Fax: (401) 272-4030

**Via Fax No. (201) 585-8339**

**PERSONAL AND CONFIDENTIAL**

October 20, 1999

Mr. Edward Goldberg
Universal Sourcing, Inc.
Corporate Office
117 Fort Lee Road, Unit A-11
Leonia, NJ 07605

Dear Ed:

As requested, I have outlined below the steps necessary to effectuate the transfer of 50% of Universal Sourcing, Inc. from Mindy Goldberg to Michael Grady under the terms and conditions as previously agreed.

By way of reference, you will recall that all parties had agreed to a transfer of 50% of the company to Michael at a price of $48,000. This price was agreed upon by your mutual analysis of the company's balance sheet as of the end of 1998, as well as other factors. You both had agreed that the acquisition of the stock would be as of the first day of this year, and Michael would assume ownership of the stock as of that date.

In order to document this transaction, you should do the following:

1. Execute a sales agreement between Mindy as "seller" and Michael as "buyer" to transfer 50% of Mindy's stock in Universal Sourcing, Inc. to Michael as agreed.

2. The agreement should make it clear that the sale contemplates the transfer to be effective as of January 1, 1999 (the date the parties agreed to the transfer).

3. The agreement should also indicate the terms of the sale – that is, $3,000 cash down, with the balance of $45,000 due on or before December 31, 1999.

4. The stock certificates should reflect the new ownership. Likewise, your corporate minutes should reflect any vote needed to approve such a transfer.

ANDSAGER, BARTLETT & COMPANY
CERTIFIED PUBLIC ACCOUNTANTS

Mr. Edward Goldberg
Universal Sourcing, Inc.

Page 2
October 20, 1999

5. Once the stock transfer has been documented, the company should declare a pro-rata distribution of $90,000 to the shareholders. It is anticipated that his distribution will come from the Accumulated Adjustments Accounts or "AAA" of the company and be tax-free to the shareholders.

6. Michael can use his distribution to satisfy the note to Mindy.

Please call me at (401) 272-9100 if you have any questions.

Very truly yours,

Edward P. Pieroni
Principal

cc: Michael Grady

[illegible].doc