UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL F. GRADY, a Rhode Island domiciliary,<br><br>Plaintiff,<br><br>-against-<br><br>EDWARD GOLDBERG, a New Jersey domiciliary, MINDY GOLDBERG, a New Jersey domiciliary, and UNIVERSAL SOURCING, INC., a New Jersey corporation,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No: 07-237S |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## TABLE OF CONTENT

PRELIMINARY STATEMENT ....................................................................................2

PROCEDURAL BACKGROUND..............................................................................5

THE ALLEGATIONS OF THE AMENDED COMPLAINT ......................................6

ARGUMENT ...........................................................................................................10

POINT I

THE LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS COMPEL THE REJECTION OF THE AMENDED COMPLAINT ...............................10

POINT II

THE AMENDED COMPLAINT, LIKE THE ORIGINAL COMPLAINT, FAILS TO PLEAD A CLAIM FOR FRAUDULENT INDUCEMENT.....................................11

POINT III

THE AMENDED COMPLAINT, LIKE THE ORIGINAL COMPLAINT, CONTRAVENES THE STRINGENT PLEADING REQUIREMENTS OF RULE 9(B)..........................................................................................14

POINT IV

GRADY'S CLAIM FOR DAMAGES SHOULD BE DISMISSED................................16

CONCLUSION........................................................................................................16

## TABLE OF AUTHORITY

### Cases

Alternative System Concepts, Inc. v. Synopsys, Inc.,
374 F.3d 23 (1st Cir. 2004) .......... 14, 15

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955 (2007) .......... 11, 14

Bogosian v. Bederman,
823 A.2d 1117 (2003) .......... 13

Bourdon's v. Ecin Indus., Inc.,
704 A.2d 747 (1997) .......... 11

Cardoso v. Mendes,
No. C.A. 94-6214, 1998 WL 321439 (R.I. Super., June 9, 1998) .......... 12

Conely v. Gibson,
355 U.S. 41 (1957) .......... 10

GTECH Holdings Corp. Sec. Litig.,
Civ. A. No. 94-0294P, 1995 WL 500414 (D. R.I., Mar. 16, 1995) .......... 15

Guilbeault v. R.J. Reynolds Tobacco Co.,
84 F.Supp. 2d 263 (D. R.I. 2000) .......... 10, 11

Haft v. Eastland Financial Corp.,
755 F.Supp. 1123 (D. R.I. 1991) .......... 15

Hasbro, Inc. v. Mikohn Gaming Corp.,
491 F.Supp. 2d 256 (D. R.I. 2007) .......... 13

Hersey v. Donaldson, Lufkin & Jenrette Securities Corp.,
317 F. 3d 16 (1st Cir. 2003) .......... 13

Lafazia v. Howe,
575 A.2d 182 (1990) .......... 12

New England Data Services, Inc. v. Becher,
829 F.2d 286 (1st Cir. 1987) .......... 15

Sekuk Global Enterprises v. KVH Indus., Inc.,
No. Civ. A 04-306 ML, 2005 WL 1924202, (D. R.I., Aug. 11, 2005) .......... 14

Shine v. Owens-Illinois, Inc.,
979 F.2d 93 (7th Cir. 1992) .......... 3

Stebbins v. Wells,
766 A.2d 369 (2001) ........ 13

Suna v. Bailey Corp.,
107 F.3d 64 (1st Cir. 1997) ........ 14

United States v. AVX Corp.,
962 F.2d 108 (1st Cir. 1992) ........ 11

United States v. Karvelas,
360 F.3d 220 (1st Cir. 2004) ........ 14, 15

**Statutes**

28 U.S.C. § 1404(a) ........ 1, 5, 17

28 U.S.C. § 1406(a) ........ 1

Fed. R. Civ. P. 12(b)(2) ........ 1, 5

Fed. R. Civ. P. 12(b)(6) ........ 1, 4, 5, 10, 11, 13, 16

Fed. R. Civ. P. 9(b) ........ 1, 2, 4, 5, 10, 14, 15, 16

Defendants Edward Goldberg ("Goldberg"), Mindy Goldberg, and Universal Sourcing, Inc. ("USI"), respectfully submit this moving memorandum of law in support of their motion for an order: (i) dismissing the amended complaint filed by plaintiff Michael F. Grady ("Grady"), for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b); (ii) dismissing the amended complaint as against defendant Mindy Goldberg, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction; or (iii) alternatively, transferring the action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).[1]

[1] In response to the original complaint, defendants filed a three-part motion: (1) to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b); (2) to dismiss the action as against defendant Mindy Goldberg for lack of personal jurisdiction, pursuant to Fed. R. Civ. 12(b)(2); and (3) alternatively, to transfer the action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). In response to the 12(b)(6) and 9(b) aspect of the motion, Grady filed a motion for leave to amend, which was granted. With respect to that part of the motion pertaining to lack of personal jurisdiction and transfer, Grady filed his opposition to the motion in the form of a memorandum of law and affidavits, and defendants submitted their reply in the form of memoranda of law and reply declarations. Thus, those two parts of defendants' original motion, pertaining to the dismissal of Mindy Goldberg for lack of personal jurisdiction and the request in the alternative to transfer the case, are presently *sub judice*. To complete the record with respect to the amended complaint, defendants repeat the jurisdictional and transfer motions here in response to the amended complaint, although defendants rely on their prior submissions to the Court in support of those motions. Therefore, we attach to the accompanying declaration of Joseph Zelmanovitz, at Exhibits B to L, respectively, the following: (B) "Defendants' Motion to Dismiss or Transfer" and "Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Complaint Or, Alternatively, To Transfer The Action To The District Of New Jersey," dated August 30, 2007; (C) "Declaration of Jay S. Auslander in Support of Defendants' Motion to Dismiss or to Transfer the Action," dated August 30, 2007; (D) "Declaration of Defendant Edward Goldberg in Support of Motion to Dismiss or Transfer," dated August 29, 2007; (E) "Declaration of Defendant Darlene Mindy Goldberg in Support of Motion to Dismiss or Transfer," dated August 29, 2007; (F) "Memorandum of Law in Opposition to the Motion to Transfer," dated December 14, 2007; (G) "Memorandum of Law in Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction Over Mindy Goldberg" dated December 14, 2007; (H) "Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Action as Against Mindy Goldberg for Lack of Personal Jurisdiction," dated December 28, 2007; (I) "Reply Declaration of Jay S. Auslander in Further Support of Defendants' Motion to Dismiss the Action as Against Defendant Darlene Mindy Goldberg for Lack of Personal Jurisdiction," dated December 28, 2007; (J) "Reply Declaration of Defendant Darlene Mindy Goldberg in Further Support of Motion to Dismiss the Action Against Her for Lack of Personal Jurisdiction," dated December 28, 2007; (K) "Defendants' Reply Memorandum of Law in Support of Their Motion, in the Alternative, to Transfer the Action to the District of New Jersey," dated December 28, 2007; and (L) "Reply Declaration of Defendant Edward Goldberg in Further Support of Defendants' Motion to Transfer the Action," dated December 28, 2007. This memorandum of law only addresses defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Grady, a Rhode Island resident, brought this action against defendants, each a resident of the State of New Jersey, alleging that he was fraudulently induced to enter into a contract in 2001, by which he supposedly purchased a 50% interest in USI. Defendants moved to dismiss the original complaint because it failed to adequately plead a claim for fraudulent inducement (the only claim in both the original complaint and the amended complaint) and failed to specify the alleged fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, as that rule has been applied by the First Circuit. As we explain below, Grady's amended complaint does not rectify the basic pleading deficiencies of the original complaint. The failure by Grady to present a truthful and responsible pleading has already been cause for concern by the Court. In his Memorandum and Order re Plaintiff's Motion to Compel Depositions and for Enlargement, dated November 30, 2007 ("Memorandum and Order re Plaintiff's Motions to Compel Depositions and for Enlargement," dated November 30, 2007, a copy of which is attached to the accompanying Zelmanovitz Declaration at Exhibit M), Magistrate Judge Martin criticized Grady's original complaint as lacking in "any specifics" regarding alleged misrepresentations (at p. 6), and, further, that Grady's failure to plead with the required specificity "is particularly striking because Plaintiff's lack of specificity has unquestionably been brought to his attention" (*Id.*). Magistrate Judge Martin also pointed out that Grady later acknowledged that certain of his previous assertions were not true (*Id.* at 7). Indeed, Grady's penchant for playing fast and loose with his obligation to plead truthfully and responsibly has brought him to the brink of sanctions. *See* Memorandum of Nov. 30, 2007, at 10-11 ("Defendants' request for sanctions is not frivolous. The Court has already detailed the apparent lack of factual basis for statements which Plaintiff has made about Mindy in his

Complaint and other filings. The Court has also recounted his largely baseless motion practice which has increased Defendants' litigation costs. Plaintiff's pro se status does not exempt him from compliance with the Rules of Civil Procedure.")

Magistrate Judge Martin concluded the Memorandum and Order with words of caution for Grady:

> Although a warning is not required before sanctions may be imposed, *see Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 96 (7th Cir. 1992) ("the district court is not required to fire a warning shot prior to imposing sanctions") (internal quotation marks omitted), the Court, in a final act of largess because of Plaintiff's pro se status, will not impose sanctions at this juncture. Instead, the Court cautions Plaintiff that he must insure that any future filings and/or actions undertaken in connection with this lawsuit fully comply with the Federal Rules of Civil Procedure, especially Rule 11.

Memorandum of Nov. 30, 2007, at 11.

Unfortunately, Grady has not heeded the cautionary direction of the Court. His new pleading, the amended complaint, once again fails to comply with the pleading requirements of the Federal Rules of Civil Procedure and Grady's obligations under Rule 11. His insertion of a few more paragraphs to a defective complaint adds nothing of substance sufficient to cure the many defects in the original pleading that the Court pointed out to him. And Grady cannot chalk up his failure to plead correctly to his pro se status. It does not take an experienced attorney to appreciate the obligation to allege fraud with specificity, and, as Magistrate Judge Martin remarked, pro se plaintiffs do not get a free pass. They are not permitted to besmirch the good names of people by asserting baseless, defective, and factually barren claims, like Grady does here. Grady obviously refuses to acknowledge his obligations under Rule 11, and his defective amended complaint should be stricken and the case dismissed as a consequence.

Because Grady has not rectified his pleading deficiencies that were inherent in the original complaint, we repeat below many of the points defendants asserted in support of their motion to dismiss the original complaint.

First, as was the case with respect to the original complaint, there is not one fact in the amended complaint that supports a claim for fraudulent inducement -- the only "claim" alleged. Other than conclusory allegations (indeed, the allegations of Grady's claim amount to no more than a formulaic recitation of the elements of a claim for fraudulent inducement), not one fact describes the alleged "misrepresentation" that supposedly "induced" Grady to enter into the alleged agreement. The amended complaint, like its predecessor, violates basic rules of pleading promulgated by the United States Supreme Court and it should, therefore, be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Second, the lack of factual detail in the amended complaint is grounds for dismissal under Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff plead the circumstances of an alleged claim of fraud with particularity. The First Circuit construes Rule 9(b) as requiring the pleader, among other things, to describe the content of the alleged misrepresentation and to set forth the date, time, and place of it. None of that necessary detail is found in the amended complaint. All that the amended complaint adds to the original complaint is a history of the parties' relationship; there is nothing of substance added insofar as the claim for fraudulent inducement is concerned. In fact, if anything, the history of the parties' relationship recounted by Grady in his amended complaint demonstrates why Grady cannot plead his reasonable or justifiable reliance on any alleged misrepresentation: Grady alleges he threatened time and again to quit as a salesman for USI because promises were supposedly not

kept. Given those allegations, Grady could not possibly have relied on any subsequent promises. The absence of such reliance is fatal to his pleading.

The amended complaint is also inherently contradictory. While Grady avers in his declaration that he "is not suing upon the agreement itself" [*i.e.*, the alleged agreement to transfer 50% of the shares in USI to him], Grady does a complete about face when demanding damages -- damages that would be compensable (if Grady's claim were correct, which it is not) if the agreement *were* in force; *i.e.*, "benefit of the bargain" damages.

The Court has seen enough of Grady's claim to know that it is at best illusory and legally defective, and at worst, plainly false. In either case, dismissal under Rules 12(b)(6) and 9(b) is warranted.

## PROCEDURAL BACKGROUND

As mentioned above, after Grady filed his original complaint, defendants moved (i) to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), (ii) to dismiss the action as against defendant Mindy Goldberg pursuant to Fed. R. Civ. P. 12(b)(2), for lack of jurisdiction, and (iii) alternatively, to transfer the action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Grady then filed (i) a motion for leave to amend the complaint, (ii) an opposition to the motion to transfer, and (iii) an opposition to the motion to dismiss for lack of personal jurisdiction over Mindy Goldberg. Defendants filed reply memoranda and declarations in connection with the jurisdictional and transfer motions, and an opposition to plaintiff's motion for leave to amend the complaint.

By Order dated January 9, 2008, Magistrate Judge Martin granted Grady's Motion for Leave to Amend Complaint. Although Grady filed a certificate of service attesting to the service

of the amended complaint on defendants on December 7, 2007, the amended complaint was actually served on or about January 7, 2008, and was E-filed with the Court on January 9, 2008.

## THE ALLEGATIONS OF THE AMENDED COMPLAINT

Grady's amended complaint sounds more like a claim for breach of contract than does even the original complaint; yet, no such claim is alleged. Instead, like before, Grady reverts to a "fraudulent inducement" claim, but the pleading is devoid of factual allegations supporting the claim.

The amended complaint once again acknowledges that both Goldberg and Mindy Goldberg reside in New Jersey (Am. Complaint ¶¶ 1-2). It again acknowledges that USI is a New Jersey corporation with its principal place of business located in New Jersey. The amended complaint alleges in cryptic fashion that USI conducts "substantial" business in Rhode Island, although, like the original complaint, the amended complaint does not describe that business (*Id.* ¶ 3). In an apparent effort to avoid outright dismissal, the amended complaint adds: "Moreover, on several occasions over several years, Goldberg traveled to Rhode Island to discuss the subject transaction with Grady and others" (*Id*. ¶ 4). Notably, no similar allegation is made regarding Mindy Goldberg. Instead, at paragraph 5 of the amended complaint, it is alleged that Goldberg's "representations and admissions to Grady in the State of Rhode Island" and the several occasions in which he traveled to Rhode Island, were also "as the agent for Mindy Goldberg."[2]

The amended complaint then goes through a litany of matters long pre-dating the alleged agreement into which Grady claims he was fraudulently induced, which, as we show below, in fact gives the lie to any claim for fraudulent inducement. The amended complaint alleges that in or about February 1997, the Goldbergs purportedly offered Grady "the opportunity to own 50%

---

[2] In "Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Action as Against Mindy Goldberg for Lack of Personal Jurisdiction," dated December 28, 2007, defendants point out that such factually-deficient allegations of agency do not salvage the pleading from dismissal.



PRV 931068.1

of USI," in exchange for Grady paying USI his 50% of the net profits he earned on certain transactions, (*id.* ¶ 10), but this agreement was never consummated. The amended complaint discusses how Grady and Goldberg first met on December 14, 1995 (*id.* ¶ 11); how Goldberg called Grady in 1996 to "become a partner in USI" (*id.* ¶ 12); how Grady brokered sales through USI in 1997 (*id.* ¶ 13); and how Goldberg and Grady supposedly agreed in 1997 to share the business equally, with Goldberg writing up the agreement (*id.* ¶ 13-15).

All of this background material has nothing at all to do with the fraudulent inducement claim pleaded. But even more damaging to Grady's fraudulent inducement claim (because of the absence of reasonable reliance) are the many additional allegations set forth in the amended complaint (as opposed to the original complaint) which detail Grady's repeated threats to terminate the relationship because no agreement was forthcoming: Grady alleges that in July 1997, "Grady threatened to stop doing business with USI because the written agreement was *not completed*" (*id.* ¶ 15.)[3] Again, by December1997, "Grady once again threatened to leave USI," but was requested by Goldberg to trust him to get the agreement committed in writing (*id.* ¶ 17). Again, Grady alleges that "[b]y September, 1999, Grady was totally fed up" and arranged for a meeting with Goldberg and a Providence tax lawyer "to structure the agreement…" (*id.* ¶ 19). The tax lawyer "sent his plan" to Grady and Goldberg in October 1999 (*id.* ¶ 19). And even afterward, in "early 2000," Grady again threatened to leave USI. Allegedly, an "agreement" was then forwarded to Grady with respect to the "transfer of the stock," providing "that money would change hands on paper only…" (*id.* ¶ 21). Notably, this part of Grady's story is entirely different from the original complaint (signed by Grady pursuant to Fed. R. Civ. P. 11), in that it recites as the consideration for the agreement that Grady "already built up huge equity…" (*id.*).

---

[3] Grady also never articulates the terms of this alleged agreement that was supposed to have been memorialized in writing.

The amended complaint does not disclose what if anything occurred with respect to this alleged agreement when sent in "early 2000." Instead, months later, by June 18, 2000, there was apparently still no agreement in force, and Grady alleges that he demanded "that the deal be performed by the end of that week" (*id*. ¶ 22).

The amended complaint does not address what happened after this June 18, 2000 demand, only that some side investment in a plant in China was agreed upon (*id*. ¶ 23.) Indeed, the amended complaint acknowledges that a year and a half later, by "December 2001," the written agreement had not yet been finalized" (*id*. ¶ 25). The amended complaint states that the terms of the agreement had not been agreed upon by December 2001, for it was only then that, according to the amended complaint, "the agreement was negotiated over the phone," and "at the conference table" at Grady's office in Johnston, Rhode Island (*id*. ¶ 26).

But the agreement was still not completed by January 14, 2002 (*id*. ¶ 27). In February 2002, Grady and Goldberg supposedly "agreed that a $30,000 loan that had been made by Grady to USI in June 2001 can be considered as a transaction for the payment of the stock…" (*id*. ¶ 28). The amended complaint, however, does not explain the existence of any consideration beyond the loan transaction for purposes of the agreement to transfer the shares, other than the vague reference to "built up" equity (*id.*).

According to the amended complaint, there was still no finalized agreement by February 21, 2002 (*id*. ¶ 29), and, as he did many times before, Grady again threatened to leave USI (*id.*). There followed a series of alleged communications between Grady and Goldberg, which allegedly culminated in a signed agreement effective January 1, 2001 from Mindy Goldberg (*id*. ¶¶ 30-33).

The amended complaint goes on to recite the terms of the written agreement (*id*. ¶ 34), but there is no allegation explaining how any of those terms are false now, and certainly no allegation detailing how they were false when made and known by defendants to be false when made.

While Grady's allegations spin a story of how no agreement was reached over the course of five years -- from 1997 to 2002 -- they glaringly lack substantive allegations that would support a claim for fraudulent inducement: There is not a single allegation of a misrepresentation allegedly inducing Grady to enter into this contract. Indeed, there are no allegations of any representations in the entire pleading, other than the alleged promise to transfer the shares contained in the agreement (on which no claim is brought here). There is not even a hint as to the substance of the "misrepresentations," nor is there any allegation as to when they were allegedly made, whether defendants knew they were untrue when they allegedly made them (whatever they are), and similar details necessary to support a claim for fraudulent inducement. The very suggestion that a party who threatened to terminate the relationship on five separate occasions over the course of five years could be said to have relied on any representations is utterly absurd.

Grady deliberately avoided pleading a claim for breach of contract. Like the original complaint, the sole claim for relief ("Count I") in the amended complaint is entitled "fraud in the inducement." As set forth above, however, the amended complaint lists only the elements of a fraudulent inducement claim; it does not set forth a single fact in support of that claim. Thus, the amended complaint alleges that defendants fraudulently induced Grady to enter into the alleged agreement (*id.* ¶ 40), without explaining how he was fraudulently induced to do so; the amended complaint mentions "representations and concealments" by defendants (*id.* ¶ 41), without

describing the alleged representations, much less providing particulars as to when, where, and how the representations were made and who made them; and the amended complaint alleges that Grady "reasonably and justifiably relied upon the misrepresentations and concealments" (*id.*), without providing any facts to support that conclusory statement, and without explaining how he reasonably or justifiably relied on anything represented to him after having allegedly been so "fed up" with defendants' lack of performance that he threatened to leave USI at least five times over the course of five years.

As we now show, the amended complaint must be dismissed pursuant to Rules 12(b)(6) and 9(b) .

## ARGUMENT

### POINT I

### THE LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS COMPEL THE REJECTION OF THE AMENDED COMPLAINT

As was the case regarding his original complaint, Grady has taken the courts' liberal approach to Rule 12(b)(6) motions as a license to omit essential facts from the amended complaint. While it is well established that "[d]ismissal under Rule 12(b)(6) is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim,'" *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F.Supp. 2d 263, 367 (D. R.I. 2000) (quoting *Conely v. Gibson*, 355 U.S. 41, 45-46 (1957)), this Court has warned the pleader that *facts*, not mere conclusions, are still necessary in order to stave off dismissal:

> The standard "does not mean…that a court must (or should) accept every allegation made by the complaint, no matter how conclusory or generalized… '[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no defense."

*Guilbeault*, 84 F.Supp. 2d at 267 (quoting *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992)).

The requirement to plead *facts* was recently affirmed by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007):

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, …a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do… .

127 S. Ct. at 1964-65.

That is all that the original complaint and the amended complaint provide: conclusions and a "formulaic recitation" of the elements of a cause of action for fraudulent inducement. The Supreme Court of the United States and this Court have held this to be deficient and subject to dismissal under Rule 12(b)(6). And to the extent "facts" are inserted in the amended complaint, they have nothing to do with the claim that is alleged.

## POINT II

## THE AMENDED COMPLAINT, LIKE THE ORIGINAL COMPLAINT, FAILS TO PLEAD A CLAIM FOR FRAUDULENT INDUCEMENT

The basic definition of fraud in the inducement highlights the defects in Grady's claim:

> Fraud in the inducement is defined as "[m]isrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations she has undertaken."

*Bourdon's, Inc. v. Ecin Indus., Inc.*, 704 A.2d 747, 753 (1997) (quoting Black's Law Dictionary 661 (6th ed. 1990)).

As was the case with the original complaint, the amended complaint fails to plead any facts fitting this definition: Grady has not disclosed the contents of the alleged misrepresentations and he has not alleged how he was supposedly led to believe the misrepresentations and thereby entered into the agreement to acquire shares of stock in USI. Indeed, there is not one fact alleged showing that Grady actually *relied* on any misrepresentation – another key element of a claim for fraudulent inducement; nor could such a fact be alleged in light of the distrust displayed by Grady concerning defendants' promised performance over the many years of the parties' relationship. *See LaFazia v. Howe*, 575 A.2d 182, 185 (1990) ("It is fundamental to actions predicated on the theory of deceit that the party claiming deceit present evidence that shows that he or she was induced to act because of his or her reliance upon the alleged false representations"). In fact, Grady does not even allege any facts showing that he believed that the alleged misrepresentations (whatever they supposedly are) were true. *See Cardoso v. Mendes*, No. C.A. 94-6214, 1998 WL 321439, at *7 (R.I. Super., June 9, 1998) ("The question is 'not whether the representation is knowingly false, but whether the other party believed it to be true and thus was misled by such a representation into making the contract'" (quoting *LaFazia v. Howe*, 575 A.2d 182, 185 (1990)).

An example of this fatal flaw in the pleading is with respect to the terms of the written agreement recited at paragraph 34 of the amended complaint. There is not a word in the amended complaint explaining (i) how any of the representations are false even today, (ii) how they were false when made, and (iii) that defendants knew they were false when made. Moreover, Grady's fraudulent inducement claim suffers from a chronological flaw in logic: How could a representation appearing in the written agreement have *induced* Grady to enter into that same agreement?

The amended complaint fails utterly to allege facts supporting a fraud claim. "To establish a prima facie damages claim in a fraud case, 'the plaintiff must prove that the defendant "made a false representation intending thereby to induce plaintiff to rely thereon" and that the plaintiff justifiably relied thereon' to his or her damage." *Bogosian v. Bederman,* 823 A.2d 1117, 1120 (2003) (quoting *Stebbins v. Wells*, 766 A.2d 369, 372 (2001)). *See Hasbro, Inc. v. Mikohn Gaming Corp.*, 491 F.Supp. 2d 256, 264 (D. R.I. 2007) (same). As we mention above, one who alleges that he was so "fed up" with the performance of his adversaries to the extent of threatening to sever their relationship on at least five separate occasions over the course of five years cannot possibly have justifiably relied on any representations regarding the alleged agreement. *See Hersey v. Donaldson, Lufkin & Jenrette Securities Corp.*, 317 F.3d 16, 24 (1st Cir. 2003) (reliance on misrepresentation was not reasonable where plaintiff was a well-educated, intelligent man with business experience, who "could not have trusted [defendant], considering the numerous times he questioned [defendants'] competence and judgment").[4]

Grady merely gives lip service to the legal elements of his claim without alleging any facts showing the misrepresentations and the fraudulent inducement; nor can he plead his justifiable reliance on the misrepresentations.

Accordingly, the claim for fraud in the inducement, the only claim in the amended complaint, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[4] Although *Hersey* was decided under Ohio law, the need to establish justifiable reliance for a fraud claim is the same in Rhode Island.

**POINT III**

**THE AMENDED COMPLAINT, LIKE THE ORIGINAL COMPLAINT, CONTRAVENES THE STRINGENT PLEADING REQUIREMENTS OF RULE 9(b)**

We explain above that the amended complaint does not satisfy the pleading requirements of the Federal Rules, regardless of the nature of the claim. *See Bell Atlantic v. Twombly*, 127 S. Ct. at 1964-65 ("more than labels and conclusions" must be plead).

Fed. R. Civ. P. 9(b) highlights the defects in Grady's amended complaint even more, for pursuant to Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). These defects merit dismissal of the pleading with prejudice because Grady had already one opportunity to correct the defects (from his original complaint) and has not done so.

The First Circuit has construed Rule 9(b) so as to require a plaintiff pleading fraud to

> (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

*Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (citations and quotations omitted). *See Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (under Rule 9(b), "the pleader usually is expected to testify the who, what, where, and when of the allegedly false or fraudulent representation"); *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 226 (1st Cir. 2004) ("Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations").

The pleading must allege "the reason why the statements are fraudulent, *Sekuk Global Enterprises v. KVH Indus., Inc.*, No. Civ. A 04-306 ML, 2005 WL 1924202, at *6 (D. R.I., Aug. 11, 2005); "*how* the challenged statements are misleading" and "what is untrue about each of the

challenged statements," *Haft v. Eastland Financial Corp.*, 755 F.Supp. 1123, 1128 (D. R.I. 1991) (emphasis in original); and "*specific facts*" showing that it is "reasonable" to believe that the defendant "knew that [the] statements were materially false or misleading when made," *In re GTECH Holdings Corp. Sec. Litig.*, Civ. A. No. 94-0294P, 1995 WL 500414 (D. R.I., Mar. 16, 1995) (emphasis in original).

Grady's amended complaint violates Rule 9(b) in every respect: It does not specify the contents of the alleged misrepresentations giving rise to the claim for fraudulent inducement; it does not identify the speakers of those alleged misrepresentations; it does not specify where and when those statements were made; and it does not explain why the statements (which are not described) were fraudulent. Dismissal of a pleading is appropriate when these specifics are missing. *See, e.g., Alternative System Concepts*, 374 F.3d at 30 (complaint "did not provide any details as to who allegedly uttered the misleading statements, to whom they were made, when they occurred, and what actions they engendered…the district court's dismissal of that barebones claim was entirely proper").

Rule 9(b) serves the purposes, among other things, of enabling defendants "to prepare a meaningful response" to the pleading and "to safeguard defendants from frivolous charges which might damage their reputations." *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987); *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d at 226 (same); *Haft*, 755 F.Supp. at 1127 (same). Defendants cannot possibly prepare a meaningful response to this amended complaint any more than they could have to the original complaint, especially given that the alleged misrepresentations are not described.

Accordingly, pursuant to Rule 9(b), the amended complaint should be dismissed.

**POINT IV**

**GRADY'S CLAIM FOR DAMAGES SHOULD BE DISMISSED**

At paragraph 43 of the proposed amended complaint, Grady states the damages he seeks:

> "Grady seeks compensatory damages in an amount in excess of $75,000.00 representing lost commissions, tax benefits, salary, benefits, patent rights and his ownership interest in the Chinese manufacturing plant…"

Putting aside any legal defect regarding any specific damage item mentioned above, as a general matter, these damages are not recoverable in this action because they are predicated on Grady affirming the agreement (he claims he was fraudulently induced to enter into); Grady demands to be placed in the same position as if the agreement were honored. But that is not what Grady states under oath in his declaration submitted in opposition to defendants' motion to dismiss the original complaint. Grady avers:

> "Grady is not suing upon the agreement itself but upon the misrepresentations that were made by Goldberg on behalf of USI and Mindy Goldberg. Therefore, any contention that the agreement is governed by New Jersey law or, it was entered into in New Jersey, is irrelevant and immaterial to the transfer issue."

"Declaration of Michael F. Grady in Opposition to the Motion to Dismiss and/or Transfer and Personal Jurisdiction over Mindy Goldberg," at p. 3, attached as Exhibit 1 to Grady's "Memorandum of Law in Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction Over Mindy Goldberg" (attached as Exhibit G to the accompanying Zelmanovitz Declaration).

Having disaffirmed the agreement, Grady cannot do an about face for purposes of seeking damages and pretend that the agreement is in place.

**CONCLUSION**

For the above reasons, the amended complaint should be dismissed with prejudice pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Independent of

these grounds, the action should be dismissed as against defendant Mindy Goldberg for lack of personal jurisdiction. To the extent the Court is not inclined to dismiss the case outright, defendants respectfully request that the action be transferred, pursuant to 28 U.S.C. §§ 1404(a) or 1406(a), to the United States District Court for the District of New Jersey.

Dated: January 18, 2008

EDWARD GOLDBERG,
MINDY GOLDBERG, AND
UNIVERSAL SOURCING, INC.

By its Attorneys,

/s/ Armando E. Batastini
Armando E. Batastini (#6016)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(fax) (401) 276-6611

SILLER WILK LLP
Jay S. Auslander
Natalie Shkolnik
Joseph Zelmanovitz (Of Counsel)
675 Third Avenue – 9th Floor
New York, New York 10017
(212) 421-2233
(fax) (212) 752-6380