# C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL F. GRADY, a Rhode Island domiciliary, | : | |
| Plaintiff, | : | Case No: 07-237S |
| -against- | : | |
| EDWARD GOLDBERG, a New Jersey domiciliary, MINDY GOLDBERG, a New Jersey domiciliary, and UNIVERSAL SOURCING, INC., a New Jersey corporation, | : | |
| Defendants. | : | |

**DECLARATION OF JAY S. AUSLANDER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER THE ACTION**

Jay S. Auslander solemnly declares under penalty of perjury as follows:

1. I am a member of the firm of Siller Wilk LLP, co-counsel for defendants in this action. I submit this declaration in support of defendants' motion for an order (i) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the complaint filed by plaintiff Michael F. Grady ("Grady"), on the ground that it fails to state a claim, (ii) pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, dismissing the complaint on the ground that it fails to plead fraud with particularity, and (iii) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, dismissing the complaint as against defendant Mindy Goldberg for lack of personal jurisdiction. In the event the Court does not dismiss the complaint, defendants request that the action be transferred, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), to the United States District Court for the District of New Jersey.

2. A copy of the complaint is attached to this declaration as Exhibit A.

3. The complaint contains a single cause of action against defendants, which is labeled "fraud in the inducement." As is set forth in the accompanying memorandum of law, this claim should be dismissed (i) pursuant to Fed. R. Civ. P. 12(b)(6) because, on its face, the complaint fails to plead a claim for fraud in the inducement and (ii) pursuant to Fed. R. Civ. P. 9(b), because the complaint fails to particularize, in any respect, the circumstances of the alleged fraud.

4. Defendant Mindy Goldberg (whose full name is Darlene Mindy Goldberg) also moves to dismiss the complaint as against her, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. The facts supporting the motion, which demonstrate the absence of any meaningful contacts between Mindy Goldberg and Rhode Island, are set forth in the accompanying declaration of Mindy Goldberg.

5. To the extent the Court is not inclined to dismiss the complaint outright, defendants request that the Court transfer the action, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), to the United States District Court for the District of New Jersey, because it is the more appropriate and convenient forum for this dispute. The facts supporting transfer to the District of New Jersey are set forth in the accompanying declaration of defendant Edward Goldberg.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 30th day of August, 2007, in New York, New York.

Jay S. Auslander

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE STATE OF RHODE ISLAND

MICHAEL F. GRADY, a
Rhode Island domiciliary,

Plaintiff,

CA 07 237S
CASE NO.

v.

EDWARD GOLDBERG, a
New Jersey domiciliary,
MINDY GOLDBERG, a
New Jersey domiciliary, and
UNIVERSAL SOURCING,
INC., a New Jersey corporation,

Defendants.

---

## COMPLAINT FOR DAMAGES

The Plaintiff, MICHAEL F. GRADY ("Grady"), appearing Pro Se on behalf of himself, and pursuant to the Federal Rules of Civil Procedure and the Local General Rules of the United States District Court for the State of Rhode Island, serves this his Complaint for Damages against the Defendants, EDWARD GOLDBERG ("Goldberg") and MINDY GOLDBERG (collectively referred to as "Goldbergs") and UNIVERSAL SOURCING, INC. ("USI") and alleges as follows:

## GENERAL ALLEGATIONS

### The Parties

1. Goldberg is a citizen and domiciliary of the State of New Jersey. He is of the age of majority, and, otherwise, sui juris.

2. Mindy Golderg is a citizen and domiciliary of the State of New Jersey. She is of the age of majority, and, otherwise, sui juris.

3. USI is a corporation organized and formed in the State of New Jersey. It has its

principal place of business in the State of New Jersey. However, it conducts substantial but not isolated business in the State of Rhode Island, and, consequently it is subject to in personam jurisdiction in the State of Rhode Island.

4. The Goldbergs are also subject to in personam jurisdiction in the State of Rhode Island as they have conducted substantial but not isolated business in the State of Rhode Island, and, they each have made representations and admissions to Grady in the State of Rhode Island with regard to the transaction which is the subject matter of this Complaint for Damages.

5. Grady is a citizen and domiciliary of the State of Rhode Island. He is of majority age and otherwise, sui juris.

<u>Jurisdiction and Venue</u>

6. This is a cause of action between citizens and domiciliaries of different states and the amount in controversy exceeds the value of $75,000.00, exclusive of interest and costs, and, consequently, there is subject matter jurisdiction pursuant to 28 U.S.C. 1332.

7. Venue is appropriate pursuant to 28 U.S.C. 1391 because a substantial part of the events or admissions giving rise to the Complaint for Damages occurred within this judicial district. Moreover, USI maintains an office in East Greenwich in the State of Rhode Island, and, USI conducts substantial but not isolated business in the State of Rhode Island.

8. Moreover, Goldberg and Mindy Goldberg made representations to Grady with regard to the transaction which is the subject matter of this cause of action in the State of Rhode Island.

**<u>Material Facts Common to All Causes of Action</u>**

9. On or about 1997, the Goldbergs offered Grady the opportunity to own 50% of USI in exchange for which Grady would pay to USI his 50% of the net profits he earned on transactions that he brokered through other suppliers of premiums. Prior to his agreement to acquire an

ownership interest in USI, Grady procured premiums such as fanny packs, cameras, CD players, radios, tool kits, tote bags, calculators, pens, pencils, flashlights and other similar type promotional products brand named for clients such as Inc. Magazine to promote goodwill for those clients.

10. In 1997, Grady and Goldberg agreed that Grady would acquire a 50% ownership in USI. Prior to the agreement to acquire an ownership interest in USI, Grady procured premiums for his clients through several suppliers, including but not limited to USI.

11. The agreement Grady had with premium suppliers was to share 50% of the net profit *for each transaction. Pursuant to his agreement with the Goldbergs and USI, Grady would direct* all of his profit which he earned on transactions which he brokered through other suppliers to be paid directly to USI. In addition, the net profits that were earned on any transaction where USI was the supplier went directly to USI. These amounts were the typical 50% split of the net profit.

12. In return, Grady was to acquire a 50% interest in USI and receive a salary from USI and generate sales. Goldberg was responsible to supervise the office staff and handle purchase orders, customs compliance, deliveries and all other ordering and shipping related at issues. Goldberg was also responsible to handle the financial aspects of USI, including receivables, payables, cash flow and accounting. In fact, his father was retained as the outside accountant for USI.

13. The role of Goldberg to supervise the office staff, it was agreed, was not a full time *job. As such, Goldberg was also expected to concentrate on the generation of sales.*

14. Over the next several years, Grady became increasingly frustrated because Goldberg never consummated the agreement for the delivery of the shares in USI or a shareholders agreement which had also been promised.

15. Finally, in January of 2001, an agreement for the purchase and sale of a 50% interest

in USI by Grady was prepared and executed, a copy of which is attached hereto, made a part hereof, and, marked as Exhibit "1" (the "Agreement").

16. Based upon representations made by Goldberg, the Agreement contains a provision where the alleged consideration for the transfer of stock was $30,000.00. Goldberg insisted that this provision be placed in the Agreement because he stated the SBA lender to USI would not accept and approve the transaction for the sale of some stock in USI unless specific dollar consideration was mentioned. At the time, Mindy Goldberg was the sole shareholder of USI. Goldberg named his wife as sole shareholder in USI in order to take advantage of certain minority owned business related programs.

17. As a consequence, the Agreement was drafted to reflect that financial consideration.

18. In May, 2001, Goldberg assured Grady that the SBA lender had approved the transaction for the transfer of the stock to Grady from Mindy Goldberg and the SBA lender would not hold USI in default as a result of the sale of stock to Grady. Nonetheless, the Goldbergs and USI still failed and refused to deliver the shares in USI to Grady.

19. Toward the end of 2001, Grady, once again, expressed his ever increasing frustration and disappointment with the failure of the Goldbergs and USI to conclude the transaction for the transfer of the stock in USI. In fact, Grady threatened that if the transaction was not consummated immediately, then, he would revert back to the old arrangement he had with USI. Grady also requested that the Goldbergs and USI fulfill the promise to have a shareholders agreement between USI, the Goldbergs and Grady drafted and finalized. The shareholders agreement was not a condition precedent to the ownership interest of Grady in USI.

20. Eventually, the shares of stock were finally delivered to Grady in February, 2002. A true and correct copy of the original Stock Certificate delivered from USI and Mindy Goldberg to

Grady is attached hereto, made a part hereof, and marked as Exhibit "2".

21. When the shares of stock were delivered to Grady, consistent with the representations and warranties made by Mindy Goldberg in the Agreement, the USI shares would be free of all liens. Moreover, Mindy Goldberg, in the Agreement, had warranted and represented that she had the actual authority and power to sell and transfer the shares for 50% of USI to Grady. Indeed, these are the very same representations made by Goldberg to Grady. Notwithstanding the Agreement reached between the Goldbergs and USI and Grady, the Goldbergs and USI have failed and refused to honor the ownership interest of Grady in USI. In particular, they have failed and refused to provide financial information and failed and refused to provide the necessary information for Grady to file his tax returns, including, but not limited to, forms W-2 and the K-1 statements required to be delivered to shareholders of a SubChapter S corporation.

22. As a proximate cause of the misrepresentations made to Grady by the Goldbergs and USI, Grady has suffered substantial damages, including, but not limited to loss of income because of the distribution of profits to USI from outside transactions with other brokers and the inability to obtain certain tax advantages through the delivery of his forms W-2 and K-1 to Grady from USI.

23. Moreover, USI and the Goldbergs have usurped patents for various products which were invented and designed by Goldberg and Grady and Keith Rosenzweig, another employee of USI. Instead of having those items patented by the three (3) inventors. Goldberg, Grady and Mr. Rosenzweig, Goldberg had the patents put in his own name.

24. Moreover, Grady, Goldberg and Mr. Rosenzweig all invested in a manufacturing plant in China that produces various premiums, but, the Goldbergs and USI have failed and refused to deliver the representation of the ownership interest of Grady in the China manufacturing plant to him.

25. Any and all conditions precedent to the initiation of this action have been performed, occurred or were waived.

**COUNT I**

**FRAUD IN THE INDUCEMENT**

26. Grady realleges and incorporates herein by reference the General Allegations.

27. USI, Goldberg and Mindy Goldberg fraudulently induced Grady into entering into the Agreement to become a shareholder in USI. Goldberg, Mindy Goldberg and USI knew that these representations were false when made. Goldberg, Mindy Goldberg and USI intended to induce Grady to act upon these misrepresentations and concealments.

28. The representations and concealments by Goldberg, Mindy Goldberg and USI induced Grady into entering into the Agreement to become a shareholder in USI. Grady reasonably and justifiably relied upon the misrepresentations and concealments to his detriment.

29. The misrepresentations and concealments made by Goldberg, Mindy Goldberg and USI have proximately caused Grady to suffer significant damages.

30. Therefore, Grady seeks compensatory damages in an amount in excess of $75,000.00 representing lost commissions, tax benefits, salary, benefits, patent rights and his ownership interest in the Chinese factory plus any and all other appropriate relief that this Court deems just and equitable.

WHEREFORE, based on the above, the Plaintiff, MICHAEL F. GRADY, requests this Court enter Final Judgment in his favor against EDWARD GOLDBERG, MINDY GOLDBERG and

**UNIVERSAL SOURCING, INC., joint and severally, for any and all consequential, compensatory and special damages and such and further relief as this Court deems just and proper.**

**MICHAEL F. GRADY**
**100 Jefferson Drive**
**E. Greenwich, RI 02818**
**401-834-9215**

**H:\LIB\DOCS\11042006\PLDG\HX4401.WPD**

# EXHIBIT 1

CA 07 237

**STOCK PURCHASE AGREEMENT**

**AGREEMENT made as of January 1, 2001 between Darlene Mindy Goldberg ("Seller"), an individual residing at 501 Rois Avenue Teaneck, NJ 07666 and Michael Grady ("Purchaser"), an individual residing at 100 Jefferson Drive East Greenwich, RI 02818.**

**WITNESSETH**

**WHEREAS, Seller owns two thousand (2000) shares (the "Issued Shares") of common stock, no par value, of UNIVERSAL SOURCING, INC. (The "Corporation") representing all of the issued and outstanding shares of the Corporation, and**

**WHEREAS, Purchaser desires to purchase 50% of the Issued Shares (i.e. 2000 shares, the "Shares"), and the seller desires to sell the Shares to Purchaser, pursuant to the terms and conditions of this agreement.**

**NOW, THEREFORE, the parties agree as follows:**

**1.** **Sale of the Shares. Seller hereby sells to the Purchaser, and Purchaser hereby purchases from Seller, the Shares for the price and upon the terms and conditions set forth in the Agreement.**

**2.** **Purchase Price. The aggregate consideration (the "Price") to be paid by Purchaser for the Shares is $ 30,000.00. The price shall be paid as follows:**

**2.1** **Cash: $ 30,000.00 in cash or by unendorsed check payable to the order of the Seller delivered simultaneously with the execution and delivery of this Agreement.**

**3.** **Delivery of the Shares: Seller has simultaneously herewith delivered the Shares to Purchaser. To accomplish such delivery, Seller has tendered the certificate for the Shares together with the necessary stock power. Purchaser shall be responsible for obtaining and affixing any requires stock transfer stamps.**

**4.** **Additional Terms and Conditions.**

**4.1** **S Corporation Status: The parties acknowledge that the Corporation has elected under the Internal Revenue Code of 1986, as amended, to be treated as an S Corporation.**

Page(1) MG DMG

[redacted]

4.2 Distributions.

4.2.1 Acknowledgement. The parties acknowledge that as a result of the Corporation's S Corporation status, Seller, as a shareholder of the Corporation has been individually subject to income taxes based upon the corporate earnings of the Corporation.

4.2.2 Entitlement. Should the Corporation declare and pay at any time from and after the date of this Agreement a distribution with respect to the Shares which relates to the income of the Corporation for any period prior to the date of this Agreement (the Pre-Closing Time Period) then the parties agree that the Seller shall be deemed the party entitled to such distribution, notwithstanding Purchaser's ownership of the Shares at the time of the declaration and payment of such distribution. This section 4.2.2 shall apply, however, only to a distribution specifically relating to the Pre-Closing Time Period income of the Corporation, and Purchaser shall be entitled to retain for himself all other distributions with respect to the Shares which are declared and paid from and after the date of this agreement.

5. Representations.

5.1 Seller. Seller hereby represents and warrants to Purchaser that:

5.1.1 She owns the Shares free and clear of all liens and encumbrances.

5.1.2 She has full power and authority to execute, deliver and perform this Agreement, including the sale of the shares.

5.1.3 No brokers or agents were involved in connection with her sale of the Shares to Purchaser or otherwise in connection with her negotiation, execution, delivery or performance of this Agreement.

5.2 Purchaser. Purchaser hereby represents and warrants to Seller that:

Page (2) JH

5.2.1 He has full power and authority to execute, deliver and perform this Agreement, including the acquisition of the Shares.

5.2.2 He is a key employee of the Corporation and is fully familiar with the business and operations of the Corporation, has made such investigation of the Corporation as he has deemed advisable and believes that the price is fair and reasonable.

5.2.3 No brokers or agents were involved in connection with his acquisition of the Shares from Seller or otherwise in connection with the negotiation, execution, delivery or performance of this Agreement.

5.3 Survival. The representations, warranties and covenants contained in this Agreement, including those set forth in sections 4 and 5 shall survive the closing. Each party hereby agrees to indemnify and hold harmless the other party from and against any loss, liability or expense (including, without limitation, reasonable attorneys fees) which such other party may incur due to the breach of any representation, warranty or covenant of the indemnifying party.

6. Miscellaneous.

6.1 Captions. Headings contained in this Agreement have been inserted for reference purposes only and shall not be construed as part of this Agreement.

6.2 Entire Agreement. This Agreement represents the entire agreement between the Seller and Purchaser regarding the subject matter hereof and cannot be modified or terminated, nor may any of its provisions be waved, except by a written instrument signed by Seller and Purchaser. There are no representations, warranties or covenants except as expressly set forth in this Agreement.

6.3 Governing Law. This Agreement has been made and entered into in the State of New Jersey and shall be governed by and construed and enforced in accordance with the internal substantive laws of the State of New Jersey.

Page (3) [handwritten initials]

6.4 Notices. Any notice or other communication given or made pursuant to this Agreement must be in writing and shall be delivered to the person to whom intended at the address set forth above (or at such other address as such person may designate by proper notice) by personal delivery, by telecopier, by nationally recognized carrier (Federal Express, DHL, Express Mail, etc.) or by certified or registered mail, postage prepaid, and shall be deemed given when personally delivered or sent by telecopier or two (2) business days after deposit with a courier or five (5) business after mailing.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

SELLER:

Darleen Mindy Goldberg

Witness

PURCHASER:

Michael Grady

Witness

Page (4)

# EXHIBIT 2

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW JERSEY

UNIVERSAL [illegible]

[illegible]

**This Certifies that** Michael F. Grady *is the owner of* One Thousand (1,000) *fully paid and non-assessable Shares of the Capital Stock of the above named Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed this* Twenty Seventh *day of* February *A.D.* 2002

D. Mindy Goldberg
SECRETARY

D. Mindy Goldberg
PRESIDENT

## EXPLANATION OF ABBREVIATIONS

The following abbreviations, when used in the inscription of ownership on the face of this certificate, shall be construed as if they were written out in full according to applicable laws or regulations. Abbreviations, in addition to those appearing below, may be used.

| | | | |
|---|---|---|---|
| JT TEN | As joint tenants with right of survivorship and not as tenants in common | TEN ENT | As tenants by the entireties |
| | | UNIF GIFT MIN ACT | Uniform Gifts to Minors Act |
| TEN COM | As tenants in common | CUST | Custodian for |

*For Value Received,* ______ *hereby sell, assign and transfer unto*

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE

[ ] ______________________________

______________________________ *Shares*

*represented by the within Certificate, and do hereby irrevocably constitute and appoint*

______________________________ *Attorney*

*to transfer the said Shares on the books of the within named Corporation with full power of substitution in the premises.*

*Dated* ______________ *19*___

*In presence of*

______________________________ ______________________________

NOTICE: THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATEVER