UNITED STATES DISTRICT COURT
FOR THE STATE OF RHODE ISLAND

MICHAEL F. GRADY, a
Rhode Island domiciliary,

CASE NO. CA 07-237S ML

Plaintiff,

v.

EDWARD GOLDBERG, a
New Jersey domiciliary,
MINDY GOLDBERG, a
New Jersey domiciliary, and
UNIVERSAL SOURCING,
INC., a New Jersey corporation,

Defendants.

---

**MEMORANDUM OF LAW OF THE PLAINTIFF IN OPPOSITION TO THE MOTION TO DISMISS OR TRANSFER**

The Plaintiff, MICHAEL F. GRADY ("Grady"), pursuant to the Federal Rules of Civil Procedure, 28 U.S.C. 1404(a) and 1406, and, the Local General Rules of the United States District Court for the District of Rhode Island, serves this his Memorandum of Law In Opposition to the Motion to Dismiss or Transfer, and, as his grounds therefore states as follows:

## INTRODUCTION

In response to an Order entered by Magistrate Judge Martin which suggested that the original Complaint in the instant action did not allege fraud with sufficient specificity, but, before any answer or order which ruled upon the motion to dismiss the original Complaint was entered, Grady served an Amended Complaint which sets forth with much clearer and more detailed factual specificity the claims of fraud in the instant action. It should also be noted that the Amended Complaint

adds allegations with regard to the claims against one defendant, Mindy Goldberg, that she is subject to in personam jurisdiction in Rhode Island as her husband and agent negotiated, in Rhode Island, the sale of 50% of her 100% ownership in USI to Grady. [1]

The transaction at issue was supposed to transfer fifty percent (50%) of the shares of stock in the Defendant, Universal Sourcing, Inc. ("USI"), by Mindy Goldberg to Grady, as well as delivery of an original certificate of stock which was to confirm the transaction and the stock transfer agreement. Grady was induced to pay significant sums to USI for the 50% interest pursuant to negotiations between Grady and the husband of Mindy Goldberg, the Defendant, Edward Goldberg ("Goldberg").Consequently,Goldberg was acting as the agent of Mindy Goldberg, and, he conducted negotiations with regard to the transaction beginning in 1996 and continued to take compensation from Grady in accordance with the misrepresentations, yet, failed and refused to tender the stock transfer agreement and the stock certificate until several years later. However, in the interim, as Grady has alleged, he was contributing fifty percent (50%) of the commissions he earned with regard to all sales of premiums that were placed through USI to USI. Consequently, Grady performed for years on his commitment to the transaction, but, the Defendants failed and refused to deliver the stock and written confirmation of the stock transfer agreement until February, 2002.

Despite the original stock certificate being transferred as well as the stock transfer

---

[1] Importantly, New Jersey State corporate records reveal that Mindy Goldberg, who denies any role with USI, was an (1) officer; (2) director; (3) a member; and, (4) the registered agent of USI. See, Declaration of Michael F. Grady.

agreement being executed and the originals forwarded to Grady, both executed by Mindy Goldberg, Goldberg and USI have advised that Grady does not now nor did he ever own any interest in USI despite Grady having paid substantial compensation and consideration to USI for that right. As a result, Grady was fraudulently induced to enter into the stock transfer agreement.

## LEGAL ARGUMENT

### I. THE AMENDED COMPLAINT ALLEGES FACTS WHICH SUPPORT A CLAIM FOR FRAUDULENT INDUCEMENT

As counsel for the Defendants must concede, the liberal federal rules of pleading provide that a complaint can be dismissed under Rule 12(b)(6) only if "it is beyond doubt that the plaintiff can prove no set of facts in support of his claim". Guildeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2nd 263, 267 (R.I. Dist. 2000) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Indeed, when reviewing the sufficiency of a complaint, the court is limited to the four corners of the pleading, and, it must accept all allegations in the pleading as true pursuant to Rule 12(b)(6).

Contrary to suggestions by the defense, Grady has plead facts in the Amended Complaint, not "conclusions" or "labels". In fact, dispelling this suggestion, on the one hand, counsel for the Defendants claim that the allegations contained in the Amended Complaint are insufficient and inadequate as "conclusions" and "labels", yet, on the other hand, their memorandum of law which references only some of the allegations contained in the Amended Complaint, then describes and details the specific allegations of fraudulent inducement contained in the Amended Complaint for five (5) pages!

In order to circumvent the well plead allegations in the Amended Complaint, counsel for the defense excerpted quotes from portions of that pleading.[1] Grady did allege that beginning in late 1996, he agreed to a partnership relation on a 50/50 basis with Goldberg and Mindy Goldberg in USI. In the beginning of 1997, in consideration for this agreement, Grady agreed to broker all of his sales activities through USI, if possible, "and when not possible agreed to have other vendors pay commissions to USI instead of Grady personally as had been done in the past" (¶ 13). Grady continues on to allege: "it was agreed between Grady and Goldberg that they would put all of their efforts, time and resources into USI, including all business related activities and all assets and aspects of the business would be shared equally between Goldberg and Grady, even those of another salesman, Keith Rosenzweig."

Next, Grady alleges that "Goldberg was to begin work on the written agreement to document the deal" (¶ 15) yet from the beginning of 1997, Goldberg failed and refused to provide the agreement in writing or the stock certificate (¶ 17). It was undisputed that during all this time Grady had continued, as he alleges, to have 50% of the commissions from all of his sales activities through USI paid to USI and he had other vendors pay commissions to USI instead of Grady personally as had been done in the past. Consequently, even though Goldberg failed and refused to commit the representations to a written agreement, Grady continued to hold up his end of the deal.

[1] Grady points out to the Court that the defense has repeatedly quoted selected parts of paragraphs and sentences from the Amended Complaint to distort the full and complete content of these allegations. Grady requests the Court review the actual allegations in the Amended Complaint.

At a September 21, 1999 meeting in Rhode Island with a Rhode Island tax attorney as well as Goldberg, Goldberg, on behalf of his wife, confirmed the stock transfer agreement. Despite this meeting and the representations of Goldberg, he continued to stall in the preparation of the stock transfer agreement. Grady then alleges that in early 2000, Grady had already built up a huge equity in terms of commissions paid to the company by his clients over the previous three (3) years from when the stock transfer agreement was originally made which, but for the fraudulent misrepresentations, would have been paid to Grady. (¶ 20).

Then, Grady alleges, with specificity, that on June 18, 2000, he sent an e-mail to Goldberg demanding that the deal be consummated by the end of the week. Also, Grady alleges that during the week of December 20, 2001 negotiation of the non-business terms of the stock transfer agreement were commenced over the telephone, and, finally, agreed upon at a conference table at the offices of USI in Johnson, Rhode Island where Goldberg was physically present. Furthermore, specific misrepresentations contained in the Amended Complaint, all made by Goldberg, have specific dates, such as February 15, 2002, February 21, 2002 and February 26, 2002. In fact, specific quotes from a dated e-mail from Goldberg are alleged.

Moreover, Grady alleges that on February 28, 2002, Grady received an original stock certificate for a fifty percent (50%) interest in USI and the original stock transfer agreement which was executed by Mindy Goldberg (¶ 33). The stock transfer agreement contains various representations which were made by Goldberg, on behalf of Mindy Goldberg and USI, and, confirmed by Mindy

Goldberg in writing. Again, these are the very same representations made by Goldberg to Grady since 1996-1997 which enticed Grady to pay substantial sums over five (5) years to USI. Contrary to the contentions of the defense, Grady alleges that the misrepresentations were false: "notwithstanding the Agreement reached between Mindy Goldberg, Goldberg, USI and Grady, the Goldbergs and USI failed and refused to honor the fifty percent (50%) interest of Grady in USI." In short, the misrepresentations that were made from late 1996 through and including February 28, 2002 were not true as Goldberg and USI have failed and refused to provide financial information regarding USI to Grady, Forms K-1 and Forms W-2, his share of the profits, his rights to patents and other information. (¶s 35, 36 and 37).

Despite all of the specific, factual allegations including date, time and place and speaker or writer, counsel for the defense claims that they are not on notice as to the specific allegations, but, instead, they cannot reply to mere "conclusions" and "labels". The specific detailed allegations in the Amended Complaint reveal otherwise.

In addition, Grady also alleges that false statements made by Goldberg, on behalf of Mindy Goldberg and USI, fraudulently induced him to become a shareholder, and, that the Defendants knew that the representations were false when made and intended to induce Grady to act upon these misrepresentations and concealments. (¶ 40). Grady then alleges that as a result of the misrepresentations and concealments, he was induced to have substantial commissions paid to USI which he earned, and, he alleges that he relied upon the misrepresentations and

concealments to his detriment. Finally, he even alleges that the misrepresentations caused him to suffer significant damages.

Consequently, in sum, Grady has complied with all of the requirements of Rule 12(b)(6) to set forth a simple and plain statement of the facts which entitle the pleader to relief. Those factual allegations must be accepted as true and it does not appear, beyond doubt, that Grady cannot prove this set of facts to support his claim. Therefore, the motion to dismiss based upon Rule 12(b)(6) must be denied.

## II. THE AMENDED COMPLAINT STATES A CLAIM FOR FRAUDULENT INDUCEMENT

Contrary to the contentions of counsel for the defense, Grady has plead fraudulent inducement. The claim identifies various misrepresentations which were originally made in 1996 and reiterated over the years, in person, by e-mail, and by telephone by Goldberg, as agent for Mindy Goldberg and USI, regarding terms of the contractual relation. The representations originally made to Grady enticed him to enter into the stock transfer agreement and direct commissions be paid to USI, to which he was otherwise personally entitled to receive, in order to comply with his consideration and commitment to build up equity in the company. Grady justifiably believed that he would be rewarded with the fifty (50%) interest in USI. Consequently, he has plead specific facts meeting the requirements of fraudulent inducement. Bourdon's v. Ecin Indus., Inc., 704 A.2d 747, 753 (1997) (quoting Black's Law Dictionary 661 (6th Ed. 1990).

Next, the defense wrongfully suggests that the Amended Complaint does not

indicate how Grady relied upon the misrepresentations made by Goldberg for the 50/50 relationship. However, Grady begins in paragraph 13 by indicating that he agreed to broker all his sales activities through USI and whenever not possible agreed to have other vendors pay commissions to USI instead of Grady personally, as had been done in the past. Until the stock transfer agreement was finally confirmed in writing in February, 2002 and signed as of January 1, 2001, Grady had continued to create a huge equity in terms of commissions paid to the company since 1997 when the stock transfer agreement was verbally originated, which commissions he otherwise would have received personally. Consequently, Grady has alleged sufficient facts to show that he relied upon the misrepresentations of Goldberg because Grady funded his equity in USI since the beginning of these misrepresentations, and, he continued to do so on through and even after the stock transfer agreement was finally reduced to writing.

In addition, Grady has alleged the representations were false and the Defendants knew that they were false when made to induce Grady to act upon them. Grady alleges that he "reasonably and justifiably" relied upon the misrepresentations and concealments to his detriment. In paragraph 41, Grady also alleges, contrary to contention of the defense, that the Defendants "knew that these representations were false when they occurred" (¶ 40).

Moreover, a fatally flawed misconception and argument of the defense is that the written stock transfer agreement constitutes the fraudulent inducement.

Contrarily, pursuant to the clear allegations in the Amended Complaint, the fraudulent inducement commenced in late 1996 and in early 1997 with verbal

misrepresentations by Goldberg, both in person and telephonically, as well as e-mails, which were repeated and continued until the written stock transfer agreement was signed by Mindy Goldberg which transferred a 50% interest in USI to Grady and the shares of stock were delivered. The misrepresentations in the stock transfer agreement simply confirmed and reiterated the fraudulent misrepresentations that had commenced in late 1996 and early 1997. In reliance upon these misrepresentations, both verbally and in writing, Grady continued to build substantial equity in USI. In short, the Amended Complaint does, indeed, allege specific facts showing the fraudulent misrepresentations that were made, when and by whom they were made, knowledge by the Defendants of their falsity, reliance by Grady, proximate cause, and, damages.

In conclusion, Grady has complied with the requirements of pleading all of the elements of a fraudulent inducement claim. In fact, the elements of the claim, as admitted in the Memorandum of the Defendants (pg. 14) which must be plead include:

> "(1) specify the statements that the plaintiff contends were fraudulent,
> (2) identify the speaker,
> (3) state where and when the statements were made, and
> (4) explain why the statements were fraudulent".

<u>Suna v. Bailey Corp</u>, 107 F.3d 64 (1st Cir. 1997). Grady met all four requirements. Importantly, Grady has complied with the pleading specificity requirements of Federal Rule of Civil Procedure 9(b). In short, the Defendants have sufficient, specific knowledge to respond to the Amended Complaint.

## III. <u>GRADY HAS ALLEGED CLAIMS FOR DAMAGES</u>

Counsel for the defense, in their memorandum of law, once again, do not completely quote the allegations in the Amended Complaint in their attempt to dismiss the damages claims.

By those omissions, counsel for the defense quotes paragraph 43 of the Amended Complaint as follows:

> "Grady seeks compensatory damages in an amount in excess of $75,000.00 representing lost commissions, tax benefits, salary, benefits, patent rights and his ownership interest in the Chinese manufacturing plant ..."

The defense relies upon this incomplete quote to support their misguided request to dismiss the damages claim.

Importantly, paragraph 43 of the Amended Complaint alleges as follows:

> "Grady seeks compensatory damages in an amount in excess of $75,000.00 representing lost commissions, tax benefits, salary, benefits, patent rights and his ownership interest in the Chinese manufacturing plant plus <u>any and all other appropriate relief as this Court deems just and equitable".</u> (e.s.)

The defense is on notice that Grady seeks all damages he sustained as a result of the fraudulent inducement. The damages claimed include "any and all appropriate relief as this Court deems just and equitable." Without citation to any statute or case law, the defense suggests to this Court that all damages claimed by Grady are solely contractual. In addition, Grady had alleged that he was demanding a final judgment against the Defendants, "jointly and severally, for any and all consequential, compensatory and special damages and such other and further relief as this Court deems just and proper." Grady has alleged damages generally and with specificity which is consistent with a claim for fraudulent inducement. In summary, Grady has properly requested general and specific damages for his fraudulent inducement claim that he has suffered since February of 1997 as a result of the fraudulent misrepresentations made by Goldberg,

individually, and, on behalf of USI and Mindy Goldberg as alleged in paragraph 43 and the Wherefore clause of Count I. Therefore, the Defendants motion to dismiss the damages claim which again contains no citations to any authority should be denied.

**IV. THE MOTION TO TRANSFER THIS ACTION TO NEW JERSEY BECAUSE RHODE ISLAND IS AN ALLEGED INCONVENIENT FORUM MUST BE DENIED**

Grady relies upon the memoranda of law and affidavits previously filed with regard to the transfer issues. However, he supplements with the following important facts.

First, the defense argues that because the documents of USI, for the most part, are located in its New Jersey office, instead of its Rhode Island and Arizona offices, transfer to New Jersey is required. Grady expects that he shall have to travel to New Jersey to review the documents and the selected documents for the years 2007 and prior shall be sent out and be placed simply on DVD disks to be used in Rhode Island for trial. The defense can scan the documents from prior years activity and e-mail them to their Rhode Island counsel. Consequently, the issue with regard to the location of the documents does not support transfer.

Importantly, the declaration of Goldberg that USI is still active is belied by the records from the State of New Jersey attached to the declaration of Grady. In addition, Grady avers that Goldberg advised him that USI was no longer in business. Most importantly, Goldberg e-mailed Grady on May 18, 2007 and advised that "I hate to have to shut down USI, but at this point, there is no other alternative". Then, in an e-mail from Goldberg to Grady dated May 22, 2007,

individually, and, on behalf of USI and Mindy Goldberg as alleged in paragraph 43 and the Wherefore clause of Count I. Therefore, the Defendants motion to dismiss the damages claim which again contains no citations to any authority should be denied.

## IV. THE MOTION TO TRANSFER THIS ACTION TO NEW JERSEY BECAUSE RHODE ISLAND IS AN ALLEGED INCONVENIENT FORUM <u>MUST BE DENIED</u>

Grady relies upon the memoranda of law and affidavits previously filed with regard to the transfer issues. However, he supplements with the following important facts.

First, the defense argues that because the documents of USI, for the most part, are located in its New Jersey office, instead of its Rhode Island and Arizona offices, transfer to New Jersey is required. Grady expects that he shall have to travel to New Jersey to review the documents and the selected documents for the years 2007 and prior shall be sent out and be placed simply on DVD disks to be used in Rhode Island for trial. The defense can scan the documents from prior years activity and e-mail them to their Rhode Island counsel. Consequently, the issue with regard to the location of the documents does not support transfer.

Importantly, the declaration of Goldberg that USI is still active is belied by the records from the State of New Jersey attached to the declaration of Grady. In addition, Grady avers that Goldberg advised him that USI was no longer in business. Most importantly, Goldberg e-mailed Grady on May 18, 2007 and advised that "I hate to have to shut down USI, but at this point, there is no other alternative". Then, in an e-mail from Goldberg to Grady dated May 22, 2007,

Goldberg confirms the demise of USI. True and correct copies of both e-mails are attached hereto as Exhibit "1" and attached to the Declaration of Grady.

Second, USI did maintain for ten (10) years, an office in the State of Rhode Island. The fact that it maintained an office in the State of Rhode Island and that Goldberg was a principal officer in the company and worked at times out of the Rhode Island office and Goldberg contacted the Rhode Island office daily by either telephone, fax or e-mail or all three forms of communication indicate that the selection of the forum of Rhode Island by Grady was appropriate and entitled to great weight and preference under 28 USC 1404.

Third, Grady and Ed Pieroni, a witness to the negotiations regarding the attempted finalization of the stock transfer agreement, both reside in Rhode Island, and, both would have to travel to New Jersey for trial, in the event of a transfer. On the other hand, absent transfer, Goldberg and Mindy Goldberg would have to travel from New Jersey to Rhode Island. Further, Goldberg and Mindy Goldberg argue vehemently that they should not have to travel for a short time to a trial in Rhode Island because they have children who would need to be cared for by others in their absence. As alleged in the Complaint and the Amended Complaint, Grady is the single parent of a young child, and, as such, if he was forced to travel to try this matter in New Jersey, then, he, too, would have to find supervision by others for his child. This argument by the defense, therefore, does not, in any way, support a request for a transfer of venue. Therefore, there is no imbalance with regard to the inconvenience to the witnesses in this case.

Fourth and finally, the defense suggests that there are 4 other witnesses, including

an accountant for USI who lives in Connecticut, and, who is the father of Goldberg, and, 2 longtime employees of Goldberg, who would allegedly have to be compelled by subpoena to help their longtime friend in a Rhode Island trial. The argument, not supported by witness affidavits, is disingenuous. For example, certainly, the father of Goldberg could travel from Hartford to Providence just as easily as he could travel from Hartford to New Jersey, to help his son in a trial, and, in either case, without a subpoena.

In sum, based upon this memorandum and the previous memoranda submitted by Grady, selection of the Rhode Island forum is appropriate and entitled to great weight and preference. The defense has not met their heavy burden to overcome the presumption that the Rhode Island forum within which the case was originally and properly filed must be changed.

## V. CONCLUSION

As a consequence, the Amended Complaint should not be dismissed, but, instead, the Motion to Dismiss should be denied as Grady properly plead his claim in compliance with Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. If the Court disagrees, Grady should be granted leave to amend to serve a Second Amended Complaint as leave to amend shall be freely granted.

In addition, Grady relies upon his previous filings and his allegations of principal/agency for a determination that the Court does, in fact, have personal jurisdiction over Mindy Goldberg, and, that there are no legitimate legal or factual reasons to transfer this action to New Jersey simply based upon the fact that a handful of friendly and related family witnesses of the defense must travel to

Rhode Island from Connecticut and New York as opposed to traveling a similar short distance to New Jersey. Moreover, two (2) witnesses, Grady and Mr. Pieroni, would have to travel to a trial in New Jersey, and, similar to the individual defendants, make arrangements for child care. In any event, not one witness or party shall be required to travel great cross-country distances to attend a trial in Rhode Island as opposed to New Jersey. Also, the USI documents must be reviewed in New Jersey by Grady and they can be easily scanned and placed on disks once selected. In sum, Grady respectfully requests that this Court deny all three (3) motions of the defense. The Defendants should be directed to serve an answer to the Amended Complaint within the time prescribed by the appropriate rules.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was mailed this 8th day of February, 2008 to: Armando E. Batastini, Esquire and Stephen M. Prignano, Esquire, Edwards, Angell, Palmer & Dodge, LLP, 2800 Financial Plaza, Providence, Rhode Island 02903 and Jay Auslander, Esquire, Joseph Zelmanovitz, Esquire and Natalie Shkolnik, Esquire, Siller, Wilk, LLP, 675 Third Avenue, New York, NY 10017-5714.

MICHAEL F. GRADY, Pro Se
100 Jefferson Drive
E. Greenwich, RI 02818
401-834-9215
mgrady.mfgassociates@cox.net