UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL F. GRADY, Plaintiff, | : | |
| v. | : | CA 07-237 ML |
| EDWARD GOLDBERG, MINDY GOLDBERG, and UNIVERSAL SOURCING, INC., Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Defendants' Motion to Dismiss or Transfer (Document ("Doc.") #40) ("Second Motion to Dismiss"[1] or "Motion"). See Motion at 1. The Motion is brought pursuant to Fed. R. Civ. P. 12(b)(2) and (6), Fed. R. Civ. P. 9(b), and 28 U.S.C. §§ 1404(a) and 1406(a). See id. Defendants seek by the Motion to: (i) dismiss the Amended Complaint in its entirety; (ii) dismiss it against Defendant Mindy Goldberg for lack of personal jurisdiction; or, alternatively, (iii) transfer this action to the United States District Court for the District of New Jersey. See id. The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was held on February 26, 2008. Because I find that the Amended Complaint should be dismissed in its entirety pursuant to Rules 12(b)(6) and 9(b), I recommend that the Motion be granted.

---

[1] The Court denominates this motion as the "Second Motion to Dismiss" because Defendants filed an identically titled motion on August 30, 2007. See Motion to Dismiss or Transfer (Document ("Doc.") #10) ("First Motion to Dismiss"). The earlier motion was passed in open court by Defendants' counsel on February 26, 2008. See Docket.

**I. Facts**

Plaintiff Michael F. Grady ("Plaintiff"), a resident of Rhode Island, alleges in his Amended Complaint (Doc. #39) that Defendants Edward Goldberg ("Mr. Goldberg" or "Edward") and Mindy Goldberg ("Mrs. Goldberg" or "Mindy") (collectively the "Goldbergs"), both residents of New Jersey, and Defendant Universal Sourcing, Inc. ("USI") (collectively "Defendants"), a New Jersey corporation, fraudulently induced Plaintiff to enter into an agreement to become a shareholder in USI.[2] See Amended Complaint ¶ 40. According to Plaintiff, the agreement was entered into verbally at the end of 1996 or beginning of 1997.[3] See Tape of 2/26/08 Hearing; see also Amended Complaint ¶¶ 10, 12.

Prior to the alleged agreement, Plaintiff was engaged in the business of procuring premiums such as fanny packs, cameras, CD players, radios, coolers, flashlights, and similar items. See Amended Complaint ¶ 10. The premiums were used by Plaintiff's clients, which included Time Magazine, as promotional products to foster good will. See id. On December 4, 1995, Mr. Goldberg approached Plaintiff and asked him "to run his premium sales through USI." Id. ¶ 11. Grady apparently acceded to this request. See id. During 1996, Plaintiff and USI split on a fifty/fifty basis the commissions earned from the sale of USI

---

[2] Although not explicitly stated in the Amended Complaint, the Court infers that at the time of the alleged agreement Mrs. Goldberg owed 100% of the stock of USI. See Amended Complaint (Doc. #39) ¶ 10 (stating that Edward, acting "on behalf of Mindy Goldberg, offered Grady the opportunity to own 50% of USI"); see also Declaration of Joseph Zelmanovitz in Support of Defendants' Motion to Dismiss or to Transfer the Action (Doc. #41), Exhibit ("Ex.") E (Declaration of Darlene Mindy Goldberg in Support of Motion to Dismiss or Transfer ("Mrs. Goldberg Decl.")) ¶ 2 (affirming that she owns "100% of the outstanding capital stock of defendant Universal Sourcing, Inc. ...").

[3] Plaintiff identified this time frame in response to a specific question from the Court at the hearing on February 26, 2008.

premiums attributable to orders obtained by Plaintiff. See id. Beginning in March 1996, Mr. Goldberg repeatedly requested that Plaintiff become a partner in USI. See id. ¶ 12. Near the end of the year, Plaintiff "agreed to the partnership relationship on a 50%-50% basis."[4] Id.

Reading the Amended Complaint generously, Plaintiff alleges that around February of 1997 Mr. Goldberg, acting on behalf of Mrs. Goldberg, offered to transfer a fifty percent interest in USI to Plaintiff in exchange for "50% of the net profits which [Plaintiff] earned on transactions that he brokered through other suppliers of premiums," id. ¶ 10, and that Plaintiff accepted this offer, thereby creating an agreement.[5] It is this agreement which Plaintiff contends Defendants fraudulently induced him to enter. See Tape of 2/26/08 Hearing.

Over the next four or more years, Mr. Goldberg repeatedly promised Plaintiff that the agreement would be reduced to writing and implemented. See Amended Complaint ¶¶ 15, 17, 29. During the same period, Plaintiff repeatedly threatened to stop doing business with USI because these promises were not kept. See id. ¶¶ 15, 17, 21-22, 29. Finally, on February 28, 2002, Plaintiff received "a signed agreement effective as of January 1, 2001[,] from Mindy Goldberg."[6] Id. ¶ 33. Mrs. Goldberg also forwarded

---

[4] Plaintiff alleges that beginning in February 1997, he and Mr. Goldberg agreed that "all assets and aspects of the business would be shared equally between Goldberg and Grady, even deals placed in by another salesman, Keith Rosenzweig." Amended Complaint ¶ 13.

[5] A generous reading of the Amended Complaint is required because Plaintiff does not explicitly state that he accepted the February 1997 offer from Mr. Goldberg. See Amended Complaint ¶ 10. The Court infers such acceptance from Plaintiff's subsequent averment that he had previously agreed late in 1996 "to the partnership relationship on a 50%-50% basis." Id. ¶ 12.

[6] Plaintiff refers to this written agreement as the "Agreement," Amended Complaint ¶ 34, and the Court adopts that designation to distinguish it from the earlier 1996-97 verbal agreement.

to Plaintiff an original stock certificate, transferring fifty percent of the original stock of USI to him. See id.

Notwithstanding the Agreement and the stock certificate, Plaintiff alleges that Defendants have failed and refused to honor his ownership interest in USI. See id. ¶ 34. He additionally complains that they have refused to provide him with financial information which he, as a shareholder of USI, needs to complete his income tax returns. See id. ¶ 35.

Plaintiff alleges that, as a proximate cause of the misrepresentations made to him, he has suffered substantial damages, including the "loss of income because of the distribution of profits to USI from outside transactions with other brokers and the inability to obtain certain tax advantages through the delivery of his forms W-2 and K-1 ...." Id. ¶ 36. He additionally alleges that Defendants "have usurped patents for various products which were invented and designed by Grady, Goldberg, and Keith Rosenzweig, another employee of USI," id. § 37, by patenting the products in name of Mr. Goldberg rather than in the name of all three inventors, see id.

**II. Relevant Travel**

Plaintiff filed his pro se Complaint (Doc. #1) on June 27, 2007. See Docket. On July 13, Defendants moved for an extension of time to August 30, 2007, to file their responsive pleading. See id.; see also Motion to Extend Time to File Responsive Pleading to Complaint (Doc. #3) at 1. Their request was granted by District Judge William E. Smith on July 16, 2007. See Docket. On August 30, 2007, Defendants filed a motion to dismiss the action or transfer it to New Jersey. See id.; see also Defendants' Motion to Dismiss or Transfer (Doc. #10) ("First Motion to Dismiss").

Plaintiff responded on September 17, 2007, by filing a motion to strike the First Motion to Dismiss. See Docket; see

also Motion and Memorandum of Law of the Plaintiff, Michael F. Grady[,] to Strike Defendants' Motion to Dismiss or Transfer (Doc. #11) ("Motion to Strike"). Plaintiff's purported basis for the Motion to Strike was that the text order granting Defendants' request for an extension stated the "answer" of each Defendant was due "8/30/07" and that Defendants by filing their First Motion to Dismiss (rather than an "answer") allegedly had not complied with the Court's order. Motion to Strike at 2 (quoting text order of 7/16/07). Plaintiff followed up his Motion to Strike the next day with a motion for an enlargement of time to respond to the First Motion to Dismiss. See Docket; see also Motion and Memorandum of Law of the Plaintiff, Michael F. Grady[,] for an Enlargement of Time to Respond to Defendants', Edward Goldberg, Mindy Goldberg and Universal Sourcing, Inc.'s Motion to Dismiss or Transfer (Doc. #12) ("First Motion for Enlargement").

On September 26, 2007, Chief Judge Mary M. Lisi denied Plaintiff's Motion to Strike and granted his First Motion for Enlargement. See Order (Doc. #15). Chief Judge Lisi's Order concluded by stating that "Plaintiff shall file his response to Defendants' [First] Motion to Dismiss on or before October 29, 2007." Id. Plaintiff's response to the first part of this Order (which denied his Motion to Strike) was to move on September 28, 2007, for reconsideration. See Motion for Reconsideration and Memorandum of Law of the Plaintiff, Michael F. Grady[,] in Reply to the Memorandum of Law of the Defendants in Opposition to the Motion to Strike the Motion of the Defendants to Dismiss or Transfer (Doc. #16) ("Motion for Reconsideration"). The Motion for Reconsideration was denied on October 10, 2007. See Docket.

Plaintiff filed on October 17, 2007, a motion to compel depositions. See Motion of the Plaintiff, Michael F. Grady[,] to Compel Taking Depositions of Mindy Goldberg, Edward Goldberg and

Jay Auslander or, to Strike the Affidavits Filed by Defendants in Support of Their Motion to Dismiss or Transfer (Doc. #19) ("Motion to Compel Depositions"). On October 30, 2007, the day after Plaintiff's response to the First Motion to Dismiss was due, he moved for a further extension of time to respond to that motion. See Motion of the Plaintiff, Michael F. Grady[,] for an Enlargement of Time to Respond to Defendants', Edward Goldberg, Mindy Goldberg and Universal Sourcing, Inc.'s Motion to Dismiss or Transfer (Doc. #20) ("Second Motion for Enlargement"). The Motion for Enlargement was referred to this Magistrate Judge, and a hearing on that motion was scheduled for November 15, 2007. See Docket. At the hearing, the Court observed that the Second Motion for Enlargement was related to the Motion to Compel Depositions and suggested that both motions should be heard together. See Tape of 11/15/07 Hearing. Both parties agreed with this suggestion, and the matter was continued to November 26, 2007, for a hearing on both motions. See id. Following the November 26, 2007, hearing, the Court took the two motions under advisement. On November 30, 2008, this Magistrate Judge denied the Motion to Compel Depositions and granted the Second Motion for Enlargement to the extent that Plaintiff was given until December 14, 2007, to file his reply to the First Motion to Dismiss. See Memorandum and Order Re Plaintiff's Motions to Compel Depositions and for Enlargement (Doc. #25) ("Memorandum and Order of 11/30/07") at 11-12.

Notwithstanding the requirement of the Memorandum and Order of 11/30/07 that Plaintiff file his response to the First Motion to Dismiss by December 14, 2007, the response was not filed until December 17, 2008. See Docket; see also Memorandum of Law in Opposition to the Motion to Transfer (Doc. #26); Memorandum of Law in Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction over Mindy Goldberg (Doc. #27). On that same date,

December 17th, Plaintiff filed a motion for leave to file an amended complaint. See Docket; see also Motion and Memorandum of the Plaintiff, Michael F. Grady[,] for Leave to Amend Complaint (Doc. #30). The Court granted this motion on January 9, 2008, in an order which noted that Defendants had not yet filed an answer to the Complaint and that Plaintiff retained the right to amend his pleading once "as a matter of course" pursuant to Rule 15(a). Order Granting Plaintiff's Motion for Leave to File Amended Complaint (Doc. #37) at 2 (quoting Rule 15(a)).

Plaintiff filed his Amended Complaint (Doc. #39) on January 9, 2008, and Defendants filed the instant Second Motion to Dismiss on January 18, 2008. See Docket. As previously stated, a hearing on the Motion was conducted on February 26, 2008, and, thereafter, the Court took the matter under advisement.

## III. Law

### A. Rule 12(b)(6)

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in the light most favorable to the pleader, In Re Credit Suisse First Boston Corp., 431 F.3d 36, 51 (1st Cir. 2005); see also Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability, Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005)(explaining that, in cases where there is no heightened pleading standard, a complaint satisfies Fed. R. Civ. P. 8(a)(2)'s notice pleading requirements if it contains a short and plain statement of the claim showing that the pleader is entitled to relief and gives the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13,

18 (1st Cir. 2002). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995); Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995).

Nevertheless, Rule 8(a) requires a "plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, Bell Atlantic Corp. v. Twombley, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 1965. Plaintiff's "plain statement" must possess enough heft to show that he is entitled to relief. Id. at 1966.

The Court is not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d at 5 (same). Rule 12(b)(6) is forgiving, see Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003), but it "is not entirely a toothless tiger," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(quoting Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004)(quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989))). A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d at 155.

**B. Rule 9(b)**

"Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement on plaintiffs alleging fraud." Suna v.

Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997); see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)(explaining that cases alleging fraud and misrepresentation constitute an exception to the general rule that "[g]reat specificity is ordinarily not required to survive a Rule 12(b)(6) motion")(alteration in original). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint making such allegations must: 1) specify the statements that the plaintiff contends were fraudulent; 2) identify the speaker; 3) state where and when the statements were made; and 4) explain why the statements were fraudulent. Suna v. Bailey Corp., 107 F.3d at 68.

## IV. Discussion

### A. Fraud in the Inducement and Rule 12(b)(6)

The sole cause of action alleged in the Amended Complaint is a claim for fraud in the inducement. See Amended Complaint §§ 39-43. "Fraud in the inducement is defined as '[m]isrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations []he has undertaken." Bourdon's, Inc. v. Ecin Indus., Inc., 704 A.2d 747, 753 (R.I. 1997)(quoting Black's Law Dictionary 661 (6th ed. 1990) (first alteration in original). The essential elements of a cause of action for fraud in Rhode Island are: 1) that the defendant made a false representation; 2) that the defendant intended to induce the plaintiff to rely upon it; 3) that the plaintiff justifiably relied upon the false representation; and 4) that plaintiff suffered damage as a result. See Guzman v. Jan-Pro Cleaning Sys., Inc., 839 A.2d 504, 507 (R.I. 2003); Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 160

(R.I. 2001). "In order to survive a motion to dismiss, plaintiffs must set forth 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Doyle v. Hasbro, 103 F.3d 186, 190 (1st Cir. 1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Thus, it is plain that an essential element of fraud in the inducement is that there be a misrepresentation. Although Plaintiff alleges in conclusory fashion that Defendants fraudulently induced him to enter into an agreement to become a shareholder in USI, that they knowingly made false representations, and that they intended to induce Plaintiff "to act upon these misrepresentations and concealments," Amended Complaint ¶ 40, Plaintiff does not identify any of these "misrepresentations and concealments," id. He also does not allege that the misrepresentations or concealments led him to enter into the Agreement with a false impression or understanding of the risks, duties, or obligations he undertook by doing so. Cf. LaFazia v. Howe, 575 A.2d 182, 185 (R.I. 1990)("It is fundamental to actions predicated on the theory of deceit that the party claiming deceit present evidence that shows that he or she was induced to act because of his or her reliance upon the alleged false representations.").

These deficiencies exist most glaringly with respect to the alleged 1996-97 verbal agreement. Again reading the Amended Complaint generously, the only Defendant who made any representation in connection with that agreement was Mr. Goldberg, who "agreed ... [that] all business related activities and all assets and aspects of the business would be shared equally between Goldberg and Grady, even deals placed in by

another salesman, Keith Rosenzweig."[7] Amended Complaint ¶ 13. Even if the Court were to construe "agreed" as meaning the same as "represented," the Amended Complaint is devoid of any statement that the representation was false or that Plaintiff relied upon it.[8]

---

[7] Although Plaintiff alleges in ¶ 10 of the Amended Complaint that in February of 1997 Mr. Goldberg was acting on behalf of Mrs. Goldberg in offering Plaintiff the opportunity to own fifty percent of USI, see Amended Complaint ¶ 10, the Court is unable to reasonably infer from the facts pled that Mrs. Goldberg or USI also made a representation to Plaintiff. See Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005)(stating that the court must "indulge all reasonable inferences that fit the plaintiff's stated theory of liability"); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002)(same).

[8] Indeed, any such claim of reliance would be directly at odds with Plaintiff's own repeated statements that for years he distrusted Defendants' promised performance. See Amended Complaint ¶ 15 ("[B]y July, 1997, Grady threatened to stop doing business with USI because the written agreement was not completed."); id. ¶ 17 ("By December, 1997, Grady once again threatened to leave USI, but, Goldberg insisted that because of their friendship, Grady should trust Goldberg to get the agreement committed to writing as soon as possible ...."); id. ¶ 19 ("By September, 1999, Grady was totally fed up with the stumbling and lack of the appropriate agreement ...."); id. ¶ 21 ("Again, in early 2000, Grady threatens to leave and Goldberg forwards an agreement in writing to Grady with regard to the transfer of the stock."); id. ¶ 22 ("On June 18, 2000, Grady sent an e-mail to Goldberg demanding that the deal be performed by the end of that week."); id. ¶ 27 (insisting in January 2002 that Plaintiff had been told in mid 2001 "that the numbers had been completed and all that had to be done was to put the paperwork together"); id. ¶ 29 ("On February 26, 2002, Grady threatens to leave USI and demands that all of his orders for his customers be stopped and demands that no-one from USI contact his customers.").

Thus, it appears that Plaintiff was so dissatisfied with Defendants' performance (or lack thereof) that he threatened to sever his business relationship with them on at least five separate occasions over the course of five years. Yet, in order to plead a prima facie claim for damages in a fraud case, the plaintiff must allege that the defendant made a false representation, intending thereby to induce the plaintiff to rely upon it, and that the plaintiff justifiably relied on the false misrepresentation to his damage. See Bogasian v. Bederman, 823 A.2d 1117, 1120 (R.I. 2003). Given Plaintiff's account of his contentious relationship with Defendants, the Court does not see how Plaintiff could allege that he

Although Plaintiff recounts in considerable detail the events preceding the Agreement which he received on February 28, 2002, see Amended Complaint ¶¶ 10-32, this detail does not remedy the fatal deficiencies of the pleading. Nowhere in the pleading is there an allegation of a misrepresentation which allegedly induced Plaintiff to enter into the Agreement.[9] Thus, despite the additional detail, the Amended Complaint does no more than the original Complaint to explain how Defendants fraudulently induced Plaintiff to enter into an agreement to become a fifty percent owner of USI. Accordingly, the Amended Complaint fails to state a claim upon which relief may be granted, and it should be dismissed pursuant to Rule 12(b)(6). I so recommend.

---

justifiably relied on their misrepresentations (whatever those misrepresentations may have been). See Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp., 317 F.3d 16, 24 (1st Cir. 2003)(holding that plaintiff's reliance on defendant's statement that board would consider financial strategies before voting on merger was unreasonable where plaintiff "could not have trusted [defendant], considering the numerous times he questioned [defendant]'s competence and judgment").

[9] In his memorandum, Plaintiff repeatedly refers to "misrepresentations" that were allegedly made by Defendants. Memorandum of Law of the Plaintiff in Opposition to the Motion to Dismiss or Transfer ("Plaintiff's Mem.") at 5-9. However, notwithstanding his assertions to the contrary, Plaintiff does not identify these "misrepresentations." Id. Plaintiff asserts, for example, that "specific misrepresentations contained in the Amended Complaint, all made by Goldberg, have specific dates, such as February 15, 2002, February 21, 2002[,] and February 26, 2002." Id. at 5. However, examination of the paragraphs of the Amended Complaint containing these dates reveals that the only statement that might arguably be construed as a "representation" is that "[o]n February 21, 2002, Goldberg promises to have the agreement finalized by Monday of the next week." Amended Complaint ¶ 29. Plaintiff alleges that he received "a signed agreement ...," id. ¶ 33, on February 28, 2002. Even assuming that the agreement was not "finalized on Monday" (February 25, 2002) and that this fact makes Goldberg's statement false, the Amended Complaint fails to explain how Plaintiff could have justifiably relied upon the statement in entering into any subsequent agreement, given that the fact which makes the statement false (i.e., that the agreement was not finalized on February 25, 2002), was clearly known to Plaintiff as of February 26, 2002.

**B. Rule 9(b)**

The Amended Complaint also fails to satisfy the requirements of Rule 9(b),[10] and its deficiencies relative to this rule are even more striking. The Amended Complaint does not specify the statements that Plaintiff contends were fraudulent; it does not identify the speaker of the alleged misrepresentations; it does not specify where and when those statements were made; and it does not explain why the statements (which are not described) were fraudulent. See Suna v. Bailey Corp., 107 F.3d at 68 (stating that a complaint alleging fraud must specify these four pieces of information); see also United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004) ("Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations."); cf. Sekuk Global Enters. v. KVH Indus., Inc., No. Civ. A. 04-306ML, 2005 WL 1924202, at *6 (D.R.I. Aug. 11, 2005)(stating in securities fraud litigation case that plaintiff "must specify the alleged fraudulent statements, the identity of the speaker, the time and place that the statements were made, and the reason why the statements are fraudulent"). Thus, because the Amended Complaint fails to comply with Rule 9(b), it should be dismissed. I so recommend.

**C. Request to File Second Amended Complaint**

The only real question presented by the instant Motion is whether Plaintiff's request that he should be given another

---

[10] Fed. R. Civ. P. 9(b) states:

> (b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

opportunity to serve an amended complaint which satisfies the requirements of Rules 12(b)(6) and 9(b) should be granted. See Memorandum of Law of the Plaintiff in Opposition to the Motion to Dismiss or Transfer ("Plaintiff's Mem.") at 13 (requesting leave to file a Second Amended Complaint if the Court finds the Amended Complaint should be dismissed). After careful consideration, the Court concludes for the following reasons that Plaintiff's request for leave to file a second amended complaint should be denied.

First, the deficiencies in Plaintiff's pleading, including its failure to satisfy the requirement of Rule 9(b), were clearly brought to his attention before he filed his Amended Complaint. See Memorandum and Order of 11/30/07 at 6-7.[11] Thus, he has already had two opportunities to file an adequate complaint, and his most recent filing was made after the requirements Rule 9(b) were brought directly to his attention. It is also difficult to see what additional information Plaintiff would be able to supply which would alleviate the inadequacies of his pleading. The problem for Plaintiff, as explained in the following paragraph, is that he has chosen to cast what would appear to be a breach of

---

[11] In the Memorandum and Order of 11/30/07, the Court observed that:

> Plaintiff's lack of specificity [in the original Complaint] has unquestionably been brought to his attention. Defendants have repeatedly cited this deficiency in their filings. See Defendants' Dismissal Mem. at 1 ("not one fact describes the alleged 'misrepresentation' that supposedly 'induced' Grady to enter into the agreement"); ... id. at 5 ("the complaint mentions 'representations and concealments' by defendants ([Complaint] ¶ 28), without describing the alleged representations, much less providing particulars as to when, where, and how the representations were made and who made them")[.]

Memorandum and Order of 11/30/07 at 6-7 (second alteration in original).

contract claim as a claim for fraud in the inducement.[12]

Second, at its core, Plaintiff's complaint appears to be that Defendants had no intention, at the time the agreement was made (whenever that might have occurred), of performing their obligations under the contract. However, this does not state a claim for fraud in the inducement. See Wall v. CSX Transp. Corp., 471 F.3d 410, 416 (2nd Cir. 2006)("'[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract.' Thus, 'general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim.'")(second alteration in original)(applying New York law); Telecom Int'l America, Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2nd Cir. 2001)("[S]imply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim."); id. (finding that plaintiff's "fraudulent inducement claim ... fails because it is simply a breach of contract claim in the tort clothing of (factually unsupported) allegations of an intent to breach"); cf. Motrade v. Rizkozaan, Inc., No. 95-Civ. 6545(DC), 1998 WL 108013, at *7 (S.D.N.Y. Mar. 11, 1998)("In order to properly convert a contract claim into a tort claim for fraud, the allegedly defrauded party must set forth in the complaint specific facts from which a trier of fact could directly or

[12] The fact that Plaintiff's complaint against Defendants is more of a breach of contract claim than a claim for fraud in the inducement is reflected in his averment that "[n]otwithstanding the Agreement reached between [Defendants] and Grady, the Goldbergs and USI have failed and refused to honor the ownership interest of Grady in USI," Amended Complaint ¶ 34, and that his claim for damages is largely based on what he would be entitled to under the contract, see id. ¶ 43.

indirectly infer that the promisor intended not to honor the promise at the time the promise was made.”); id. (“These material misrepresentations must not be mere promissory statement[s] as to what will be done in the future, which give rise only to a breach of contract claim, but must constitute representation[s] of present fact.”)(alterations in original)(internal quotation marks omitted); but see Enzo Biochem, Inc. v. Johnson & Johnson, No. 87 Civ. 6125(KMW), 1992 WL 309613, at *11 (S.D.N.Y. Oct. 15, 1992) (“Under New York law a person who induces another to enter into a contract by misrepresenting a material fact or making a promise that he or she has no intention of keeping may be held liable for damages in fraud.”).

Third, extending further consideration to Plaintiff would be unfair to Defendants. The Court has previously noted that Plaintiff has “caused these out-of-state Defendants to incur significant legal expenses based on a Complaint which they contend is deficient on its face and should be dismissed.” Memorandum and Order of 11/30/07 at 8. The Court has also previously noted that in the course or this litigation Plaintiff has made assertions which apparently lacked factual basis. See id. at 7 (noting that “Plaintiff has now filed a reply memorandum in which he not only again fails to provide any details of Mindy’s alleged misrepresentations, but seemingly acknowledges that his previous assertions that Mindy made such representations to him are not true”). Defendants’ contention that Plaintiff’s pleadings are deficient on their face has now been determined by the Court to be well-founded. Plaintiff has also engaged in baseless motion practice which has increased Defendants’ litigation costs. See id. at 2-3, 8, 11. Allowing Plaintiff to file a Second Amended Complaint would further prolong this litigation and increase Defendants’ costs even more. Furthermore, the Court has previously extended consideration to

Plaintiff because of his pro se status, see id. at 9 (giving Plaintiff the benefit of the doubt and finding good cause for his failure to file Second Motion for Enlargement by October 29, 2007, deadline).

Fourth, it appears that after the Court gave Plaintiff the benefit of the doubt and granted him an extension of time within which to file his response to the First Motion to Dismiss, Plaintiff failed to file that response by the deadline established by the Court. The Memorandum and Order of 11/30/07 stated that he was to "file his response to the [First] Motion to Dismiss by December 14, 2007." Id. at 10. Plaintiff did not file that response until December 17, 2007. While the filing of the Amended Complaint has rendered the First Motion to Dismiss moot, the Court is struck by the fact that once again Plaintiff failed to meet a deadline established by the Court. See id. at 4 (noting that Plaintiff filed his Motion for Enlargement one day after the deadline stated in Chief Judge Lisi's September 26, 2007, order). The Court also notes that it found Plaintiff's explanation for his failure to meet the earlier deadline "unconvincing." Id. at 9 n.5. Thus, the Court is disinclined to afford Plaintiff the benefit of any more doubt regarding whether this litigation should continue.

**V. Summary**

Plaintiff's Amended Complaint fails to state a claim for fraud in the inducement because, among other reasons, it does not identify the allegedly fraudulent representions and does not explain how those representations were fraudulent. Therefore, the Amended Complaint should be dismissed pursuant to Rule 12(b)(6). The Amended Complaint also fails to satisfy the pleading requirements of Rule 9(b) and should be dismissed on that basis as well. I so recommend.

Having made this determination, the Court finds it

unnecessary to address Defendants' request to dismiss the action against Mrs. Goldberg for lack of personal jurisdiction or their alternative request that the action be transferred to the United States District Court for the District of New Jersey.
Plaintiff's request for leave to file a second amended complaint should be denied for the reasons stated in the previous section.

**VI. Conclusion**

For the reasons stated above, I recommend that Defendants' Motion to Dismiss be granted. Any objections to this Report and Recommendation With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636 (c). must be specific and must be filed with the Clerk within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 10, 2008