UNITED STATES DISTRICT COURT
FOR THE STATE OF RHODE ISLAND

MICHAEL F. GRADY, a
Rhode Island domiciliary,

Plaintiff,

CASE NO. CA 07-237S

v.

EDWARD GOLDBERG, a
New Jersey domiciliary,
MINDY GOLDBERG, a
New Jersey domiciliary, and
UNIVERSAL SOURCING,
INC., a New Jersey corporation,

Defendants.

**OBJECTIONS OF THE PLAINTIFF TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE ON THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

The Plaintiff, MICHAEL F. GRADY ("Grady"), pursuant to Federal Rule of Civil Procedure 72(a), 28 U.S.C. 636 (b)(1)(a), Local Rule 72(d) and applicable case law, files this the Objections of the Plaintiff to the Report and Recommendation of the Magistrate Judge on the Motion to Dismiss the First Amended Complaint, and, states as follows:

## I. INTRODUCTION

Magistrate Judge Martin has erroneously recommended this court grant a motion to dismiss this action. In making the recommendation, Magistrate Judge Martin has acted contrary to law and in contravention of his role in the judicial process, and, instead, applied his own beliefs about the credibility and reliability of the allegations in the First Amended Complaint (the "Complaint") at the motion to dismiss stage. The March 10, 2008 Report and Recommendation ("R&R") that he authored must be reconsidered.

rejected and renounced. It should be given no authority and this matter should be forwarded to an unbiased Magistrate Judge for the balance of the proceedings.

The Complaint alleges a single cause of action for fraudulent inducement. Basically, Grady has alleged that beginning in late 1996 or early 1997, Edward Goldberg ("Goldberg"), as an officer of Universal Sourcing, Inc. ("USI"), and, as the agent of his wife, Mindy Goldberg ("Mindy"), who was at the time the sole shareholder of USI, she was its president and she was a director, fraudulently misrepresented to Grady that Grady would become a 50% shareholder in USI in exchange for the payment of his 50% commissions derived from sales of products to his customers which were not generated through USI. These commissions were derived from a 50-50 split of the gross profits with the other vendors and suppliers that Grady used in addition to USI. Grady agreed with Goldberg that 100% of these commissions Grady was entitled to from other vendors would be paid directly to USI instead of to Grady. Grady and Goldberg also agreed that USI would try to develop, produce and import items on it's own for items that Grady previously had produced through other vendors and suppliers so that USI could directly benefit by keeping the added 50% that would have been paid to the other vendors and suppliers. Grady would also sell USI products to his customers and expand the USI customer base while foregoing a 50-50 split of the gross profit on orders submitted to USI, as was previously done with USI prior to the agreement for Grady to own a 50% share of USI..

Over the next several years, despite the compliance by Grady with the arrangement, the Defendants failed and refused to document and deliver the 50% ownership interest in USI to Grady, or, provide, in writing, an agreement which

substantiated and confirmed the arrangement. Over that time frame, Grady received his salary from USI, and, USI received an inflated share of his commissions and the business of USI expanded through, in part, the efforts of Grady. Finally, in February of 2002, USI, Goldberg and Mindy delivered to Grady, in Rhode Island, an original share certificate for 50% of the ownership of USI as well as a written agreement (the "Agreement") which substantiated the misrepresentations that Grady would be a 50% owner in USI. True and correct copies of the Agreement and share certificate are attached to the original complaint (DK#1), and the original complaint, the Complaint and the R&R are attached hereto, made a part hereof, and, marked as Exhibits "1","2" and "3" respectively.

Without warning or provocation, in the spring of 2007, Goldberg and USI, for the very first time, informed Grady that the verbal representations and the written documentary evidence that Grady owned 50% of USI were not true. At the end of the day, the Defendants advised Grady that it was their position he had no ownership interest in USI, despite the substantial consideration he paid for 50% of USI, and, the documentary evidence to the contrary.

In addition to the allegations in the Complaint of the specific lies made to him by the Defendants, Grady has specifically alleged the authors and orators of the fraudulent statements, the materiality of the falsehoods, the reasonable reliance of Grady upon the misrepresentations, and, the proximate cause between the misrepresentations, and, the damages caused to Grady. Nothing more is needed to be pleaded to survive a motion to dismiss.

Nevertheless, Magistrate Judge Martin inexplicably ignored the well-pleaded allegations in the Complaint, and, at the motion to dismiss stage, saw fit to recommend dismissal with prejudice of the entire action by Grady against the Defendants without leave to amend. Magistrate Judge Martin ruled upon the believability of the allegations as to the materiality of the false representations as well as whether Grady reasonably relied upon these misrepresentations. As stated below, these factual issues, specifically pleaded, cannot be determined by the trial judge in ruling on a motion to dismiss.

For the reasons stated below, the recommendation of Magistrate Judge Martin to dismiss the Complaint is clearly erroneous, contrary to law, and, applies the wrong standards of review and analysis. Consequently, the R&R should be reconsidered and reversed by this Court.

## II. GRADY CLEARLY ALLEGED MATERIAL MISREPRESENTATIONS AND RELIANCE TO SUPPORT HIS FRAUD ACTION CONTRARY TO THE CONCLUSIONS IN THE REPORT AND RECOMMENDATION

Preliminarily, Grady has no quarrel with the standard of review of the adequacy of the pleading of the allegations in the Complaint nor the case law cited in the R&R. Indeed, it is basic.

> "In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in the light most favorable to the pleader, In Re Credit Suisse First Boston Corp., 431 F.3d 36, 51 (1[st] Cir. 2005); see also, Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability. Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1[st] Cir. 2005) (explaining that, in cases where there is no heightened pleading standard, a complaint satisfies Fed. R. Civ. P. 8(a) (2)'s notice pleading requirements if it contains

> a short and plain statement of the claim showing that the pleader is entitled to relief and gives the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests); see also Arrida v. Sears, Roebuck & Co., 310 F. 3d 13, 18 (1st Cir. 2002). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Brown v. Hot, Sexy & Safer Prods., Inc., 68 F/ 3d 525, 53- )1st Cir. 1995); Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995).
>
> Nevertheless, Rule 8(a) requires a "plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. Bell Atlantic Corp. v. Twombley, ___ U.S. ____, 127 S. Ct. 1955, 1964-65 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 1966.

(R&R @ 7+8)[1]

Unconscionably, despite his clear statement of the standard of review and his restricted role in the review of the allegations in the Complaint, Magistrate Judge Martin fails to follow them. For example, he states that:

> "the Court is unable to reasonably infer from the facts plead that Mrs. Goldberg or USI also made a representation to the Plaintiff." (R&R at Pg. 10, n.7).

Furthermore, Magistrate Judge Martin complains it is not explicitly stated in the Complaint that "Mrs. Goldberg owned 100% of the stock of USI." (Pg 2, n. 2). Moreover, notwithstanding another "generous reading" of the Complaint, Magistrate Judge Martin incorrectly concludes that Grady "does not explicitly state that he accepted

---

[1] On the other hand, Magistrate Judge Martin states he is not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F. 3d 50, 54 (1st Cir.). The Complaint does not violate these warnings.

the February, 1997 offer from Mr. Goldberg." (R&R, Pg. 3, n 3).

To the contrary, any reading, never mind the "generous reading" of the Complaint that Magistrate Judge Martin constantly and consistently insists he employed, reveals that Grady alleged:

> "When the shares of stock were delivered to Grady, consistent with the representations and warranties made by Mindy Goldberg in the Agreement, the USI shares would be free of all liens. Moreover, Mindy Goldberg, in the Agreement, had warranted and represented that she had the actual authority and power to sell and transfer the shares for 50% of USI to Grady. Indeed, these are the very same representations made by Goldberg, as agent for Mindy Goldberg, to Grady. Notwithstanding the Agreement reached between Mindy Goldberg, Goldberg, USI and Grady, the Goldbergs and USI have failed and refused to honor the ownership interest of Grady in USI. In particular, Mindy Goldberg represented, [2] in writing, in the Agreement, which was delivered to Grady in Rhode Island, the following:
>
> > Seller, [Darlene Mindy Goldberg] owns two thousand (2000) shares (the "Issued Shares") of common stock, no par value, of UNIVERSAL SOURCING, INC., (the "Corporation") representing all [3]of the Issued and outstanding shares of the Corporation, and
> >
> > WHEREAS, Purchaser desires to purchase 50% of the Issued Shares (i.e. 2000 shares, the "Shares"), and the seller desires to sell the Shares to Purchaser, pursuant to the terms and conditions of the agreement.
> >
> > Sale of the Shares. Seller hereby sells to the Purchaser, and Purchaser hereby purchases from Seller, the Shares for the price and upon the terms and conditions set forth in the Agreement.
> >
> > ....
> >
> > Delivery of the Shares. Seller has simultaneously herewith

[2] It is unfathomable that Magistrate Judge Martin could not "reasonably infer" that Grady alleged these facts and misrepresentations were made by Mindy if he had read paragraph 34 of the Complaint which quotes the representations of Mrs. Goldberg from the Agreement.

[3] Any "generous reading" of the Complaint would confirm that "all" of the ownership of USI means "all" of the ownership of USI.

> delivered the Shares to Purchaser. To accomplish such delivery, Seller has tendered the certificate for the Shares together with the necessary stock power. Purchaser shall be responsible for obtaining and affixing any required stock transfer stamp.
>
> ....
>
> Representations
>
> 5.1 Seller. Seller hereby represents and warrants to Purchaser that:
>
> 5.1.1 She owns the Shares are free and clear of all liens and encumbrances.
>
> 5.1.2 She has full power and authority to execute, deliver and perform this Agreement, including the sale of the Shares.
>
> 5.1.3 No brokers or agents were involved in connection with her sale of the Shares to Purchaser or otherwise in connection with the negotiation, execution, delivery or performance of this Agreement."

(Paragraph 34 of the Complaint. e.s.)

In summary, Magistrate Judge Martin failed and refused to review the plain allegations in the Complaint in an objective and fair manner.

Next, Grady requests this court turn its review to the Rhode Island law on fraud and pleading fraud. Rhode Island law mandates that "fraud vitiates all contracts." Begosian v. Bederman, 823 A.2d 1117, 1120 (R.I. 2003). In fact, where:

> "one is induced to enter into a contract based upon a fraudulent statement from the other party to the contract, then the party who has been fraudulently induced is not bound by the contract."

Id. A defrauded party can also elect to affirm the contract and sue for damages in an action for deceit and misrepresentation. Halpert v. Rosenthal, 267A.2d 730, 733

(1970). Misrepresentation occurs upon:

> "any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts."

Halpert, at 734.

At the outset, Grady has no disagreement with the law of Rhode Island cited in the R&R. Indeed, Grady concedes, and, in fact, previously argued, that the facts alleged in the Complaint must be viewed in the light most favorable to the pleader, taken as true and given the benefit of all reasonable inferences. In short, if the allegations are sufficient to state a cause of action, then, the motion to dismiss must be denied. Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995).

Moreover, Grady does not dispute the discussion in the R&R regarding the law as to the heightened pleading requirements for a fraud action under Rule 9(b). Essentially, under Rule 9(b) and 12(b)(6), Grady had to allege the following to state a cause of action for fraud in Rhode Island:

> "(1) that the defendant made a false representation; (2) that the defendant intended to induce the plaintiff to rely upon it; (3) that the plaintiff justifiably relied upon the false representation; and (4) that plaintiff suffered damage as a result."

See, Guzman v. Jan-Pro Cleaning Svs., Inc., 839 A.2d 504, 507 (R.I. 2003); Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 160 (R.I. 2001). Underlying these essential elements, a plaintiff must allege facts to support them:

> "In order to survive a motion to dismiss, plaintiffs must set forth 'factual allegations, either direct or indirect or inferential, regarding each material element necessary to sustain recovery."

Doyle v. Hasbro, 103 F.3d 186, 190 (1st Cir. 1996).

However, in the R&R, Magistrate Judge Martin confuses the definition of fraudulent inducement with the requirements to plead a cause of action for fraud in the inducement. He writes:

> "Fraud in the inducement is <u>defined</u> as "[m]isrepresentation" as to the terms, quality or other aspects of a contractual relation, venture or other transaction that lures a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations he has undertaken."

R&R at pg. 9. (e.s.) Relying upon this definition of fraud in the inducement, Magistrate Judge Martin concludes the Complaint is deficient because it does not allege the:

> "misrepresentations or concealments led Grady to enter into the Agreement with a false impression of the risks, duties, or obligations he understood by doing so."

R&R at 10.

Nevertheless, the reliance upon this definition is misplaced. Indeed, in order to <u>PLEAD</u> a cause of action for fraudulent inducement, all that a party must allege is the four elements set forth in <u>Guzman</u>, <u>Women's Development</u> and <u>Hasbro</u>. Simply stated, none of these decisions on the requirements for pleading fraud require allegations regarding false impressions of risks, duties or obligations to survive a motion to dismiss.

The R&R, remarkably, states Grady does not identify any of the misrepresentations stated in paragraph 40 of the Complaint which paragraph alleges the Defendants made false representations. The "Fraud in the Inducement" claim at Count I starts at Paragraph 39. Paragraph 39 states as follows:

> "Grady reallages and incorporates by reference the General Allegations."

The General Allegations include THIRTY SEVEN (37) PARAGRAPHS which detail,

with specificity, clarity and detail, the allegations of the fraud and misrepresentations. (See argument below regarding Rule 9(b) compliance).

Next, the R&R states the Complaint is devoid of allegations that Grady and the Defendants agreed to the transaction that is the subject matter of the fraud. The written confirmation of the transaction is quoted in the Complaint (paragraph 34) and it is attached to the original complaint. No one needs to read the Complaint "generously" to understand these basic allegations.

Again, ignoring the requirement to accept all facts plead as true, Magistrate Judge Martin states he is unable to "reasonably infer" that Mindy made any misrepresentations to Grady (R&R at pg. 11, n. 7). Any reading of the Complaint reveals Mindy made representations to Grady (par. 34) which were confirmed in writing! See also, Exhibit 1 and 2 to the original complaint.

Further, contrary to the R&R at page 11, Grady alleged he justifiably relied upon the representations of Goldberg, Mindy and USI, which were finally confirmed in writing, to continue to do business with them. Magistrate Judge Martin, in ruling upon a motion to dismiss, concludes, without testimony, documents or any other basis, that:

> "the Court does not see how Plaintiff could allege that he justifiably relied on [Defendants] misrepresentations."

R&R, pgs. 11 and 12, n. 8. Obviously, this statement has absolutely no place in a ruling on a motion to dismiss. The allegations could be alleged, they were alleged, and, as the R&R states in its preamble, the allegations must be accepted as true. (R&R, pgs. 7 and 8)

## III. THE COMPLAINT COMPLIES WITH THE DICTATES OF RULE 9(B) AS IT STATES WITH PARTICULARITY THE FRAUDULENT MISREPRESENTATIONS

As a final insult, Magistrate Judge Martin states Grady failed to comply with the

specificity pleading requirements of Rule 9(b), and, these deficiencies were even "more striking" than any of those aforementioned. Specifically, Magistrate Judge Martin states the Complaint:

> "does not specify the statements that the Plaintiff contends were fraudulent; it does not identify the speaker of the alleged misrepresentations; it does not specify when and where those statements were made; and, it does not explain how the statements (which are not described) were fraudulent."

(R&R at 13.)

What is "more striking" is the complete, total and obvious failure of Magistrate Judge Martin to even read the Complaint. A cursory, nevermind a "generous" reading of the Complaint reveals the conclusions at R&R 13 are totally contrary to the record. Indeed, the glaring discrepancies between the well pleaded allegations in the Complaint and the R&R dictate that Magistrate Judge Martin should recuse himself as, for whatever reasons, he obviously is not at all impartial.

As for the alleged misrepresentations, this court need only to look to paragraph 10 of the Complaint for the initial material misstatement which was later repeated over and over, and, year after year by the Defendants. The initial fraudulent statement that was made and the fact it was made to Grady by Goldberg on behalf of Mindy and USI, and, later repeated by Goldberg and confirmed by Mindy on behalf of USI are clearly plead. Why Magistrate Judge Martin cannot discern who made the misrepresentations is more than perplexing in light of the fact the date the misrepresentation was first made and the subsequent dates it was repeated are also plainly plead, again, given any normal, rudimenty reading of the Complaint without resort to "generosity":

| **Date** | **Speaker** | **Citation** |
|---|---|---|
| Late 1996 | Goldberg | ¶ 12 |
| February, 1997 | Goldberg | ¶ 10 |
| July, 1997 | Goldberg | ¶ 14 |
| Aug. 1, 1997 | Goldberg | ¶ 15 |
| Fall, 1997 | Goldberg | ¶ 16-17 |
| Sept. 21, 1999 | Goldberg | ¶ 19 |
| Dec. 1999 | Goldberg | ¶ 20 |
| June 18, 2000 | Goldberg | ¶ 22 |
| Dec. 20, 2001 | Goldberg | ¶ 26 |
| Jan. 14, 2002 | Goldberg | ¶ 27 |
| Feb. 15, 2002 | Goldberg | ¶ 28 |
| Feb. 26, 2002 | Goldberg | ¶ 32 |
| Feb. 28, 2002 | Mindy | ¶ 33 |

Although Grady has alleged misrepresentations made by the Defendants over several years, on specific dates, by telephone, e-mail and in writing, Magistrate Judge Martin recommends dismissal of the Complaint at the motion to dismiss stage on the basis there are no allegations of misrepresentations. Magistrate Judge Martin relies upon LaFazia v. Howe, 545 A. 2d 182 (R.I. 1990). However, LaFazia involves a ruling on a motion for summary judgment as opposed to a motion to dismiss. In LaFazia, the buyers could not prove what they plead. Here, Magistrate Judge Martin would deny Grady that right and that opportunity that was afforded the parties in LaFazia.

Similarily, Magistrate Judge Martin states the Complaint must be dismissed at this stage because he:

> "does not see how [Grady] could allege that he justifiably relied upon their representations (whatever these misrepresentations might have been). See Hershey v. Davidson, Lufkin & Jenrette Corp., 317 F. 3d 16, 24 (1st Cir. 2003). [4]

---

[4] It is indeed perplexing that Magistrate Judge Martin concludes Grady could not possibly have justifiably relied upon the misrepresentations of the Defendants, yet, in the same breath, he profers total ignorance as to the content of the misrepresentations themselves.

(R&R at 12). However. Hershey is not authority for dismissal of an action based upon a motion to dismiss for failure to plead justifiable reliance. Instead, the Hershey Court approved a summary judgment because the plaintiff could not prove justifiable reliance. Apples and oranges.

The purpose of Rule 9 is to give fair and specific notice of the alleged fraud. Women's Development Corp. v. City of Central Falls, 764 A.2d 151, 161 (R.I. 2001) citing 1 Kent R.I. Civ. Prac. §9.2 at 92 (1969) ("What constitutes sufficient particularity necessarily depends upon the nature of the case and should always be determined in light of the purpose of the rule to give fair notice to the adverse party and to enable him to prepare his responsive pleading"). Here, the Defendants are on notice that they misrepresented, verbally and in writing, that Grady would own 50% of USI, took his contributions of commissions and development of USI, delivered false documents to him to allegedly confirm and continue the deal, and, in the end, declared he had no ownership interest in USI. Notice served. Certainly, the Defendants can properly prepare a defense from the specific allegations contained in the Complaint.

## IV. AT THE VERY LEAST, GRADY SHOULD BE AFFORDED LEAVE TO AMEND THE COMPLAINT

It is fundamental law that even assuming Grady had not plead his claims with sufficient specificity, particularity and notice, which has been accomplished, then, Grady should be provided leave to file a more particularized pleading. Womens Development at 161 citing 1 Kent § 9.2 at 93. The refusal of Magistrate Judge Martin in the R&R to provide that opportunity is contrary to the interests of justice, and, in fact, confirms his total lack of impartiality in this matter.

In the R&R, Magistrate Judge Martin rejects any leave to amend the Complaint

which was amended just once according to rule. Again. Magistrate Judge Martin writes as if he already tried this controversy. He surmises that:

> "It is difficult to see what additional information Plaintiff would be able to supply which would alleviate the inadequacies of his pleading."

R&R at 14. In the very next breath, Magistrate Judge Martin states the claim should have been alleged as breach of contract action.

Magistrate Judge Martin cites cases from other jurisdictions on the fraud/contract dichotomy and notes Grady has a contract claim (R&R. pg. 15 at n. 12). Yet, he cites no cases from Rhode Island or any other authority for the proposition that leave to amend has been abused and it should not be granted here.

Adding insult to injury, Magistrate Judge Martin cries crocodile tears for the Defendants because they allegedly had to incur attorneys fees and costs to employ at least 2 attorneys from Edwards & Angell and 3 attorneys from New York City to defend them against a pro se litigant. As a result of the size and alleged cost of the defense team, Magistrate Judge Martin complains that the continuation of the litigation by granting leave to amend would be "unfair". What is more "unfair" is that the Defendants have taken substantial funds from Grady for over ten (10) years, promised him 50% of a business that he helped develop, grow and prosper, and, now, the Defendants deny Grady has ever had any ownership interest in that business despite stock certificates and a written agreement to the contrary. The issue of what is "unfair" should be determined by a jury, and, it certainly is not an issue and it has no place when an objective trial judge must determine whether leave to amend a pleading shall be granted at the very outset of a

cause of action. [5]

In short, leave to amend must be freely granted. Grady has filed an original complaint and one amendment. Certainly, under the liberal rules of pleading and the interests of justice in determining controversies on their merits, Grady should be given leave to further amend, even if amendment is necessary, which Grady definitely disputes.

## V. CONCLUSION

Based upon the foregoing reasons and authorities, the R&R dated March 10, 2008, as amended, corrected, and, revised by Magistrate Judge Martin should absolutely be reconsidered and reversed.

First, the Complaint is well pleaded and its allegations meet all of the notice and specificity requirements of Rule 12(b)(6) and Rule 9(b). Second, all of the allegations in the Complaint must be accepted as true, yet, Magistrate Judge Martin violated that cardinal rule of judicial governance, and, he decided to take it upon himself to rule that certain alleged facts as to materiality and reliance were not capable of belief. Without question, any analysis and the ultimate determination of these alleged facts of materiality and reliance are appropriate only for the ultimate trier of fact, here, the jury. Third and finally, if the Complaint is somehow deficient in its allegations, Grady should be granted leave to amend it.

WHEREFORE, based on the above, the Plaintiff, MICHAEL F. GRADY, requests this Court reject the Report and Recommendation, direct the Defendants to

[5] There have been instances when Grady missed by a day non-jurisdictional deadlines. The attorneys for the Defendants can file under PACER, yet, Grady is denied that right. As such, Grady has to personally travel to the Court to file documents while the defense team can just click and file from their desks. This has resulted in delays in the receipt of pleadings sent to Grady by U.S. mail and caused Grady problems with filing papers in person with the Clerk. Based upon the rulings of Magistrate Judge Martin to consider these two late filings as grounds to deny leave to amend, this relative unfairness is prejudicial, and, to the extent leave to amend is denied based upon any failure to meet non-jurisdictional deadlines by one day, then, the failure of the District Court to provide Grady with access to file by PACER is unconstitutional.

answer the Complaint, recuse Magistrate Judge Martin as the Magistrate Judge in this case, and, grant such other and further relief as it determines is just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was mailed this 21st day of March, 2008 to: Armando E. Batastini, Esquire and Stephen M. Prignano, Esquire, Edwards, Angell, Palmer & Dodge, LLP, 2800 Financial Plaza, Providence, Rhode Island 02903 and Jay Auslander, Esquire, Joseph Zelmanovitz, Esquire and Natalie Shkolnik, Esquire, Siller, Wilk, LLP, 675 Third Avenue, New York, NY 10017-5714.

MICHAEL F. GRADY, Pro Se
100 Jefferson Drive
E. Greenwich, RI 02818
401-834-9215
mgrady.mfgassociates@cox.net